OFFICE OF THE LOS ANGELES CITY ATTORNEY
MICHAEL N. FEUER, City Attorney (SBN 111529)
CRAIG TAKENAKA (SBN 128898)
DEBORAH BREITHAUPT (SBN 170206)
ELAINE ZHONG (SBN 286394)
City Hall, 200 North Spring Street, 21st Floor
Los Angeles, California  90012
Telephone: (213) 922-7715
Facsimile: (213) 978-7957
Email:  Elaine.Zhong@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHP MANAGEMENT CORP. et al., | ) Case No. 2:21-cv-06311-DDP-JEM |
| | ) *Honorable Dean D. Pregerson* |
| Plaintiffs, | ) |
| | ) **CITY OF LOS ANGELES'S NOTICE** |
| vs. | ) **OF MOTION AND MOTION TO** |
| | ) **DISMISS UNDER FRCP 12(B)(1) AND** |
| CITY OF LOS ANGELES, | ) **12(B)(6); MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES** |
| Defendants. | ) |
| | ) Filed Concurrently With Request for |
| | ) Judicial Notice |
| | ) |
| | ) Hearing Date: December 6, 2021 |
| | ) Time: 10:00 am |
| | ) Courtroom: 9C |

1

CITY OF LOS ANGELES MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

**TO THE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, December 6, 2021, at 10:00 am or as soon as thereafter the matter may be heard in the above-entitled Court located at the United States District Court for the Central District of California, 350 West First Street, Courtroom 9C, 9th Floor, Los Angeles, California 90012, Defendant City of Los Angeles will and hereby do move this Court to dismiss the Complaint (ECF No. 3) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds:

1.   Plaintiffs' claims are not ripe and therefore the Court lacks subject matter jurisdiction;

2.   Plaintiffs lack standing to sue and therefore the Court lacks subject matter jurisdiction;

3.   Plaintiffs have failed to state a violation of the Takings Clause of the U.S. Constitution; and

4.   Plaintiffs have failed to state a violation of the Takings Clause of the California Constitution.

**Local Rule 7-3 Pre-Filing Conference:** This Motion was made following a Local Rule 7-3 Pre-Filing Conference of Counsel occurring on October 6, 2021.  The parties were unable to reach a resolution that eliminates the necessity of a hearing on the City's Motion.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and exhibits, the pleadings and papers on file with the Court, and on any oral argument as may be presented.

///
///

2

CITY OF LOS ANGELES MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

Respectfully submitted,

Dated: October 18, 2021        MICHAEL N. FEUER, City Attorney
                               CRAIG TAKENAKA, Managing Assistant City Attorney
                               ELAINE ZHONG, Deputy City Attorney

                               By:   _/s/ Elaine Zhong_____
                                     ELAINE ZHONG
                                     Deputy City Attorney

                                     Attorneys for Defendant
                                     CITY OF LOS ANGELES

3

CITY OF LOS ANGELES MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................1

II.   BACKGROUND ............................................................................................3

    A.   Unlawful Detainer in California.............................................................3

    B.   The City of Los Angeles's COVID-19 Eviction Protections.......................4

    C.   California's COVID-19 Tenant Relief Act ....................................................5

    D.   Los Angeles County Protections .................................................................7

    E.   COVID-19 Economic Relief Programs .......................................................7

III.   PLAINTIFFS' COMPLAINT ...........................................................................8

IV.   LEGAL STANDARD ........................................................................................8

V.   ARGUMENT ....................................................................................................9

    A.   Plaintiffs' Takings Claims Are Unripe ........................................................9

    B.   Plaintiffs Do Not Have Standing..............................................................12

    C.   Plaintiffs Do Not Plead a Compensable Taking under the U.S. or California
        Constitutions...............................................................................................14

        1.   The City's Temporary Eviction Protections Do Not Cause Permanent
                Physical Invasion of Plaintiffs' Properties.........................................15

        2.   Plaintiffs' Takings Claim Also Fails under Penn Central Because
                They Cannot Allege the City's Laws Go "Too Far" .........................18

VI.   CONCLUSION.................................................................................................24

TABLE OF CONTENTS

# **TABLE OF AUTHORITIES**

CASES

*American Waterways Operators v. U.S. Coast Guard*,
  __ F. Supp. 3d __, 2020 WL 360493 (D. Mass. Jan. 22, 2020) ...................................12

*Andrus v. Allard*,
  444 U.S. 51 (1979)...........................................................................................................23

*Apt. Ass'n of Los Angeles Cty. v. City of Los Angeles*,
  500 F. Supp. 3d 1088 (C.D. Cal. 2020) ..............................................................*passim*

*Apt. Ass'n of Los Angeles Cty. v. City of Los Angeles*,
  __ F.4th __, 2021 U.S. App. LEXIS 25539 (9th Cir. Aug. 25, 2021).......................1, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................9

*Auracle Homes, LLC v. Lamont*,
  478 F. Supp. 3d 199 (D. Conn. 2020).....................................................2, 12, 16, 24

*Avalon Pac.—Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*,
  192 Cal. App. 4th 1183 (2011) .......................................................................................16

*Aydin Corp. v. Union of India*,
  940 F.2d 527 (9th Cir. 1991) ...........................................................................................9

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ...........................................................................................9

*Ballinger v. City of Oakland*,
  398 F. Supp. 3d 560 (N.D. Cal. 2019).........................................................................21

*Baptiste v. Kennealy*,
  490 F. Supp. 3d 353 (D. Mass. 2020)......................................................2, 16, 23, 24

*Better Hous. for Long Beach v. Newsom*,
  452 F. Supp. 3d 921 (C.D. Cal. 2020) .........................................................................18

ii
TABLE OF AUTHORITIES

*Boxer v. City of Beverly Hills,*
   246 Cal. App. 4th 1212 (2016) .......................................................14

*Bridge Aina Le'a, LLC v. State Land Use Comm'n,*
   950 F.3d 610 (9th Cir. 2019). .............................................19, 21

*Brubaker Amusement Co. v. United States,*
   304 F.3d 1349 (Fed. Cir. 2002) ....................................................11

*Cal-American Income Prop. Fund Iv v. Ho,*
   161 Cal. App. 3d 583 (1984) .........................................................22

*Cedar Point Nursery v. Hassid,*
   141 S. Ct. 2063 (2021)..................................................................17

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ......................................................10

*Childs v. Eltinge,*
   29 Cal. App. 3d 843 (1973) ..........................................................22

*Clark v. City of Lakewood,*
   259 F.3d 996 (9th Cir. 2001) ........................................................12

*Colony Cove Props., LLC v. City of Carson,*
   888 F.3d 445 (9th Cir. 2018) ..............................................18, 20

*Colwell v. Dep't of Health & Hum. Servs.,*
   558 F.3d 1112 (9th Cir. 2009) ......................................................10

*Delta Constr. Co. v. EPA,*
   783 F.3d 1291 (D.C. Cir. 2015)....................................................13

*Eastern Enters. v. Apfel,*
   524 U.S. 498 (1998)......................................................................18

*El Papel LLC v. Durkan,*
   No. 2:20-cv-01323-RAJ-JRC, 2021 U.S. Dist. LEXIS 181390 (W.D. Wash. Sept. 15, 2021) .............................................................................................3

iii

TABLE OF AUTHORITIES

*Elmsford Apt. Assocs., LLC v. Cuomo*,
  469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................................................*passim*
*FCC v. Fla. Power Corp.*,
  480 U.S. 245 (1987) ...........................................................................................15, 18
*Fowler v. Guerin*,
  899 F.3d 1112 (9th Cir. 2018) ....................................................................................18
*HAPCO v. City of Philadelphia*,
  482 F. Supp. 3d 337 (E.D. Pa. 2020) ....................................................................2, 21
*Heart of Atlanta Motel v. United States*,
  379 U.S. 241 (1964) ....................................................................................................16
*Heights Apts., LLC v. Walz*,
  510 F. Supp. 3d 789 (D. Minn. 2020) .............................................................2, 16, 24
*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) ......................................................................................10
*In re BofI Holding Shareholder Litig.*,
  3:15-cv-02722-GPC-KSC, 2018 U.S. Dist. LEXIS 96155 (S.D. Cal. Jun. 7, 2018) ...10
*Jevons v. Inslee*,
  __ F. Supp. 3d __, No. 1:20-CV-3182-SAB, 2021 U.S. Dist. LEXIS 183567 (E.D.
  Wash. Sept. 20, 2021) .......................................................................................2, 16, 18
*Kavanau v. Santa Monica Rent Control Bd.*,
  16 Cal. 4th 761 (1997) ................................................................................................14
*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ....................................................................................................19
*Knick v. Township of Scott*,
  139 S. Ct. 2162 (2019) ................................................................................................10
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ......................................................................................................8

iv

TABLE OF AUTHORITIES

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)....................................................................................14

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982)....................................................................................15

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)............................................................................14, 19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................12

*MacDonald v. Cty. of Yolo*,
   477 U.S. 430 (1986)....................................................................................14

*MacLeod v. Santa Clara Cty.*,
   749 F.2d 541 (9th Cir. 1984) ...........................................................19, 20, 22

*Maverick Media Grp., Inc. v. Hillsborough Cty., Fla.*,
   528 F.3d 817 (11th Cir. 2008) .....................................................................12

*MHC Financing L.P. v. City of San Rafael*,
   714 F.3d 1118 (9th Cir. 2013) ................................................................15, 20

*Mullis v. U.S. Bankr. Ct.*,
   828 F.2d 1385 (9th Cir. 1987) ......................................................................9

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015) .....................................................................13

*Nuclear Info. & Res. Serv. v. NRC*,
   457 F.3d 941 (9th Cir. 2006) ......................................................................12

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983)....................................................................................10

*Penn Cent. Transp. Co. v. City of New York*,
   438 U.S. 104 (1978).............................................................................passim

v

TABLE OF AUTHORITIES

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988)..................................................................................18

*Rancho De Calistoga v. City of Calistoga*,
   800 F.3d 1083 (9th Cir. 2015) ...............................................................20

*S. Cal. Rental Housing Ass'n v. Cty. of San Diego*,
   3:21cv912-L-DEB, 2021 U.S. Dist. LEXIS 139970 (S.D. Cal. July 26, 2021).............2

*San Remo Hotel v. City and Cnty of San Francisco*,
   27 Cal. 4th 643 (2002) .........................................................................14

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) .................................................................9

*Schneider v. Calif. Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ...............................................................18

*Spinks v. Equity Residential Briarwood Apartments*,
   171 Cal. App. 4th 1004 (2009) .............................................................3

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) ................................................................9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
   535 U.S. 302 (2002)........................................................................14, 19

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ..............................................................9

*Thomas v. Union Carbide Agr. Prods. Co.*,
   473 U.S. 568 (1985)............................................................................9

*Titus v. Canyon Lake Prop. Owners Ass'n*,
   118 Cal. App. 4th 906 (2004) ..............................................................3

*Troy, Ltd. v. Renna*,
   727 F. 2d 287 (3d Cir. 1983)................................................................15

TABLE OF AUTHORITIES

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,
   473 U.S. 172 (1985)................................................................................................10

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) ................................................................................8

*Yee v. City of Escondido*,
   503 U.S. 519 (1992)..............................................................................................11

**STATUTES**

Cal. Civ. Proc. Code § 1159 *et seq.* ..............................................................*passim*

Cal. Civ. Code § 1671 ...........................................................................................21

Cal. Civ. Code § 1940.2 ........................................................................................21

Cal. Civ. Code § 1942.5 ........................................................................................21

Cal. Civ. Code § 1954 ...........................................................................................21

Cal. Health & Safety Code § 50897.1 ....................................................................7

Cal. Gov't Code § 12955 .......................................................................................16

Cal. Gov't Code § 12956 .......................................................................................16

Los Angeles Mun. Code § 151.00 *et seq.* .................................................3, 21, 22

San Francisco Admin. Code § 37.10B ..................................................................21

Santa Monica Mun. Code § 4.56.020 ....................................................................21

**REGULATIONS**

24 C.F.R. § 982.310 ..............................................................................................21

86 Fed. Reg. 43244 (Aug. 6, 2021).........................................................................1

**OTHER AUTHORITIES**

*LA County COVID-19 Surveillance Dashboard*, L.A. COUNTY DEPARTMENT OF PUBLIC
   HEALTH, http://dashboard.publichealth.lacounty.gov/covid19_surveillance_dashboard/
   .....................................................................................................................................1

TABLE OF AUTHORITIES

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION

The deadly COVID-19 pandemic has compelled governments around the world to take extraordinary measures to slow its spread.  *E.g.*, *Apt. Ass'n of Los Angeles Cty. v. City of Los Angeles* ("*AAGLA*"), 500 F. Supp. 3d 1088, 1091–92 (C.D. Cal. 2020), *affirmed*, __ F.4th __, 2021 U.S. App. LEXIS 25539 (9th Cir. Aug. 25, 2021).  In 2020 when the pandemic first started, like nearly every level of government, the City of Los Angeles adopted a temporary moratorium on evictions of tenants unable to pay rent because of the pandemic to prevent homelessness and further spread of disease.  The City's law does not eliminate any tenant's contractual obligation to pay rent and it applies only when the tenant has suffered an actual COVID-19-related hardship.

Over a year later, our shared crisis is not yet over.  As of this filing, a local emergency in the City still persists.  Request for Judicial Notice ("RJN") Ex. A.[1]  Over 25,000 deaths have now been recorded in Los Angeles County.[2]  Thus, the Los Angeles City Council has determined that public health measures that prevent transmission of the disease and mass displacement remain important.  And science supports their judgment: Eviction moratoria continue to facilitate critical public health interventions such as social distancing and quarantining.  *E.g.*, Centers for Disease Control and Prevention, 86 Fed. Reg. 43244, 43247–48 (Aug. 6, 2021).  In the meantime, governments have expended billions of dollars, including in the form of rental assistance, to reboot a once shuttered economy.  In addition to staving off homelessness and preventing the spread of disease, eviction moratoria now also provide governments the necessary time to distribute rental assistance to tenants and landlords.

---

[1] Council File No. 20-0291, *available at* CITYCLERK CONNECT COUNCIL FILE MANAGEMENT SYSTEM, Clerk of the City of Los Angeles, https://cityclerk.lacity.org/lacityclerkconnect/.

[2] *LA County COVID-19 Surveillance Dashboard*, L.A. COUNTY DEPARTMENT OF PUBLIC HEALTH, http://dashboard.publichealth.lacounty.gov/covid19_surveillance_dashboard/

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs are residential landlords who claim their civil rights have been violated because the City's eviction moratorium has allegedly taken their property without compensation.  In particular, they claim they have "lost" rents because of their alleged inability to evict and tenants have withheld rent during the pandemic.  But their claims should fail at the gate:  this case is neither ripe nor do Plaintiffs have standing to invoke this Court's jurisdiction.  This lawsuit challenges the City's moratorium as-applied to Plaintiffs, yet none of them allege that their tenants qualify for the City's protections or any other overlapping measure, such as under state or county law.  Nor have they alleged they have attempted to evict a tenant and were unable to do so because of the City's law, as opposed to these other measures.  Nor have they alleged that they applied for and were denied rental relief.  Therefore, it is speculative whether Plaintiffs will lose rent in the future because of the City's eviction moratorium.

On the merits, the City's moratorium also does not take property without compensation.  It only temporarily delays landlords' pursuit of evictions of COVID-19-affected tenants.  Rent may still be collected and is owed.  Further, tenants may be evicted for other causes not addressed by the moratorium.  For precisely these reasons, courts across this country have rejected Takings challenges to COVID-19 eviction moratoria.[3]  And again, while rental assistance is available, Plaintiffs have not alleged

---

[3] *E.g.*, *Jevons v. Inslee*, __ F. Supp. 3d __, No. 1:20-CV-3182-SAB, 2021 U.S. Dist. LEXIS 183567 (E.D. Wash. Sept. 20, 2021) (physical takings claim dismissed on summary judgment); *S. Cal. Rental Housing Ass'n v. Cty. of San Diego ("SCRHA")*, 3:21cv912-L-DEB, 2021 U.S. Dist. LEXIS 139970 (S.D. Cal. July 26, 2021) (Takings claim unlikely to succeed); *Heights Apts., LLC v. Walz*, 510 F. Supp. 3d 789 (D. Minn. 2020) (granting motion to dismiss on takings claim); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020) (Takings cause of action unlikely to succeed and denying preliminary injunction); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020) (same); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199 (D. Conn. 2020) (same); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020) (granting summary judgment and dismissing Takings claim); *see also El Papel LLC v.*

2

they have applied for and been denied it, so they cannot claim the City has failed to compensate them. For these reasons, the City respectfully requests that the Court dismiss this case.

## II.     BACKGROUND

### A.     <u>Unlawful Detainer in California</u>

Plaintiffs' lawsuit implicates an existing regulatory scheme governing landlord-tenant relationships. Under California law, "[a residential] lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1031 (2009). "Because of the dual aspects of the relationship . . . , landlord-tenant rights, obligations and remedies turn on both real property and contract law." *Id.* Thus, for example, when tenants breach lease obligations, there may be contractual remedies or landlords may attempt to recover possession of rental property through legal process (*i.e.*, eviction).

California law provides an expedited summary civil proceeding called unlawful detainer in state court for landlords to restore possession of real property. *See generally Titus v. Canyon Lake Prop. Owners Ass'n*, 118 Cal. App. 4th 906, 914 (2004), *overruled on other grounds by Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021). Generally, a landlord may pursue an unlawful detainer action in certain statutorily defined situations, such as when a tenant fails to perform a condition of the lease. Cal. Civ. Proc. Code ("CCP") § 1161. The grounds for unlawful detainer may be further defined by other local or state law. *E.g.*, L.A. Mun. Code ("LAMC") § 151.09 (requiring an eviction to be based on an enumerated "just cause" for rent-controlled apartments), § 151.09(A)(2)(b) (prohibiting eviction from rent-controlled apartments for unauthorized additional occupants if permission unreasonably withheld), § 151.09(D) (prohibiting eviction from

*Durkan*, No. 2:20-cv-01323-RAJ-JRC, 2021 U.S. Dist. LEXIS 181390 (W.D. Wash. Sept. 15, 2021) (recommending grant of summary judgment on physical takings theory).

3

MEMORANDUM OF POINTS AND AUTHORITIES

rent-controlled apartments based on a change in policy to bar pets); Cal. Civ. Code § 1946.2 (requiring "just cause" evictions for certain residential rental properties).

Before a landlord may pursue an unlawful detainer action for nonpayment of rent, for example, the landlord must serve the tenant with a notice and the tenant has a right to cure the default during the notice period by paying rent.  CCP §§ 1161(2)-(3); 1162.  The tenant commits an "unlawful detainer" only if the tenant fails to cure the default within the notice period.  *Id.* § 1161(2)-(3); 1161.5.

If the tenant fails to cure the default, then the landlord may file a complaint in state court for unlawful detainer.  *Id.* § 1161(2)-(3); 1161.5.  The plaintiff must serve the summons and complaint in the same manner as in other civil actions.  *Id.* §§ 1166(e), 1167.  The action is then subject to expedited procedures, as compared to other civil actions, including faster timelines for answering, conducting discovery, motions, and setting the action for trial.  *Id.* §§ 1167.3, 1167.4, 1167.5, 1170.5, 1170.7-1170.9.

### B.    The City of Los Angeles's COVID-19 Eviction Protections

When the COVID-19 pandemic first started, governments at all levels immediately recognized the need to keep their residents housed and began adopting eviction protections to control the spread of disease.  *AAGLA*, 500 F. Supp. 3d at 1092, 1096, 1102.  The City was one of them:  it adopted an eviction moratorium after making extensive findings that tenants need to be protected from eviction during the COVID-19 pandemic.  LAMC § 49.99, RJN Ex. B.[4]  As relevant here, the moratorium prohibits evictions for non-payment of rent during the local emergency *only* when a tenant is "unable to pay rent due to circumstances related to the COVID-19 pandemic."  LAMC § 49.99.2(A), RJN Ex. C.  It further protects tenants from eviction for unpaid rent accumulated during the local emergency if tenants pay within twelve months following

---

[4] The City later amended the law, on May 12, 2020, to provide a private cause of action to tenants whose landlords engage in harassing and bad faith behaviors, which accrues only after the tenant provides written notice of the alleged violation and the owner has failed to cure within a fifteen-day window.  LAMC § 49.99.7, RJN Ex. C.

4

MEMORANDUM OF POINTS AND AUTHORITIES

its expiration.  *Id.*  So, once the emergency ends, tenants face eviction for rent then due, but not for rent accumulated during the emergency for twelve months.  The law also prohibits late fees and interest on rent that is unpaid under its terms.  *Id.* § 49.99.2(D). During the local emergency, the law also prohibits no-fault evictions and non-essential evictions based on the presence of unauthorized occupants, pets, or nuisance caused by COVID-19 (for example, by children who would otherwise be at school without COVID-19 school closures).  *Id.* § 49.99.2(B), (C).  Tenants may invoke the law as an affirmative defense in an unlawful detainer action.  *Id.* § 49.99.6.  The law expressly states, ***"Nothing in this article eliminates any obligation to pay lawfully charged rent."*** *Id.* § 49.99.2(A) (emphasis added).

"Landlords may continue to evict tenants for other reasons, and do not run afoul of the Moratorium at all if they seek to evict a tenant on the basis of a good faith belief that the tenant does not qualify for the Moratorium's protections."  *AAGLA*, 500 F. Supp. 3d at 1093.  Thus, even during the pandemic, landlords can still evict tenants: (1) in arrears before the pandemic; (2) withholding rent without a COVID-19 hardship; or (3) at-fault for any reason not covered by the ordinance.  LAMC § 49.99.2(G).  For example, although the City's moratorium temporarily bars evictions based on the presence of additional occupants or pets, additional occupants or pets that cause damage or the like may still expose tenants to at-fault eviction and financial liability.  *E.g.*, Cal. Civ. Code § 1946.2(b)(1)(C), (D); CCP § 732 (treble damages action for waste).  Finally, the eviction moratorium "does not excuse tenants from their contractual obligations to pay rent, and landlords remain free to sue in contract for back rent owed."  *AAGLA*, 500 F. Supp. 3d at 1095.

## C.   California's COVID-19 Tenant Relief Act

The City's eviction moratorium is "but one layer of protection Los Angeles renters currently enjoy."  *AAGLA*, 500 F. Supp. 3d at 1102.  Initially, on April 6, 2020, the California Judicial Council halted evictions statewide through September 1, 2020. RJN Ex. D, Emergency Rules 1 and 2.  For almost five months, no court could issue a

MEMORANDUM OF POINTS AND AUTHORITIES

summons for an unlawful detainer complaint unless "necessary to protect public health and safety," nor enter a default or a default judgment for restitution in such actions. *Id.*

On August 31, 2020, just as the Judicial Council Emergency Rules were to expire, the California Legislature passed Assembly Bill 3088, which among other things, amends the state's unlawful detainer statute. Its protections were subsequently amended and extended by Senate Bill 91 in January 2021, Assembly Bill 81 in February 2021, and Assembly Bill 832 in June 2021. As of this filing: (a) unpaid rent accrued between March 1 and August 31, 2020, can *never* be the basis for an eviction, provided that the tenant suffered a COVID-19-related hardship (CCP §§ 1179.02 (defining "protected time period"), 1179.03.g.1); and (b) unpaid rent accruing between September 1, 2020 and September 30, 2021, cannot be the basis for an eviction until October 1, 2021, and if a tenant, before that date, pays at least 25 percent of rent owed for those thirteen months, the tenant cannot be evicted for owing the balance (*id.* §§ 1179.02 (defining "transition time period"), 1179.03.g.2.A-B). Also, evictions without cause may not occur until after October 1, 2021. CCP § 1179.03.5. Assembly Bill 832 also imposed new pre-litigation filing requirements: Beginning October 1, 2021, property owners must take steps to apply for rental assistance through a local or state program before they can evict tenants for COVID-19-related unpaid rent. CCP § 1179.11.

State law also imposes a number of restrictions on how and when unpaid rent owed between March 1, 2020 and September 30, 2021, may be collected outside an eviction. For example, civil actions filed to collect such rent are generally stayed until November 1, 2021. CCP § 871.10(c), (e). Similar to the City's law, no fees may be charged on late rent, provided the tenant meets certain conditions. Cal. Civ. Code § 1942.9(a). Additionally, property owners must also attempt to seek rent relief through a government program. CCP § 871.10(a).

The state law does not preempt existing local ordinances, but interacts with them in several ways relevant here. First, any extension, renewal, or new measure, "however delineated," by a locality cannot take effect until April 1, 2022. CCP § 1179.05.a.1.

6

MEMORANDUM OF POINTS AND AUTHORITIES

Second, for localities contemplating a repayment period, that period must not extend beyond May 31, 2023.  *Id.* § 1179.05.a.2.C.  Therefore, at present, rent owed under the City's law must be paid within twelve months of the expiration of the local emergency or May 1, 2023, whichever is earlier.  *Id.* §§ 1179.05.a.2.B, 1179.05.a.2.C.

### D.    Los Angeles County Protections

Meanwhile, the County of Los Angeles also recognized the need to regulate evictions during the pandemic and adopted an eviction moratorium establishing minimum countywide protections.  RJN Ex. E, Resolution.  Similar to the City, the County through January 31, 2022 forbids (1) evictions for unauthorized occupants or pets whose presence is related to the pandemic and (2) no-fault evictions.  *Id.*, Section V.A.2.  It also forbids interest and fees for unpaid rent accumulated between March 4, 2020 and January 31, 2022.  *Id.*, Section VII.

### E.    COVID-19 Economic Relief Programs

To address COVID-19's economic impacts, the City established a renter's relief program to provide rental payments to tenants and landlords hurt by the pandemic. *AAGLA*, 2021 U.S. App. LEXIS 25539, at *24.  Now the state is administering a renter's relief program for the City that provides eligible renters and landlords access to an additional $495 million (at least) in monetary assistance.  RJN Ex. F at 73, 79-83.  Under the program landlords like Plaintiffs may apply to receive funds covering 100 percent of rental debt dating back to April 1, 2020 and some prospective rent.  Cal. Health & Safety Code § 50897.1(d)-(f).  Rent relief is also available to landlords whose tenants departed without paying rent.  *Id.* § § 50897.1(h).  Myriad other economic programs also exist to financially assist tenants, property owners, and businesses.  *E.g.*, American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 3206 (assistance to mortgagors of one- to four-unit residential properties); Coronavirus Response and Relief Supplemental Appropriations Act, Pub. L. 116-260.

In short, governments have attempted to provide a holistic response to one of the gravest public health emergencies we have endured in over a century.

MEMORANDUM OF POINTS AND AUTHORITIES

## III.   PLAINTIFFS' COMPLAINT

Plaintiffs are twelve property owners who each allege three causes of action against the City of Los Angeles: (1) one under 42 U.S.C. section 1983 alleging the City's eviction moratorium is an uncompensated physical taking in violation of the Takings clause of the U.S. Constitution; (2) another under 42 U.S.C. section 1983 claiming the moratorium is an uncompensated regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978); and (3) finally one for an uncompensated taking under the California Constitution.

The Complaint asserts that an unspecified number of Plaintiffs' tenants have "taken advantage" of the City's eviction moratorium to withhold rent and are now behind on rent.  Compl. ¶¶ 7, 9-22, 50.  As a result, according to Plaintiffs, they have been unable to collect late fees or interest or refinance their properties.  *Id.* ¶¶ 53, 54.  The Complaint also alleges that "on information and belief" Plaintiffs have suffered damages because of "unauthorized individuals and pets" occupying an undetermined number of rental units.  *Id.* ¶ 55.  Otherwise, Plaintiffs do not appear to challenge any other particular provision of the City's law, such as those relating to no-fault evictions.  The Complaint does not allege whether (1) any Plaintiff has sought any evictions or attempted to collect rent from tenants in any other action; (2) any of their tenants have also invoked the protections of California or County law; or (3) any rent relief application has been made for those tenants in arrears and denied.

## IV.   LEGAL STANDARD

A complaint may be dismissed based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Plaintiffs, as the party seeking to invoke federal court jurisdiction, have the burden of establishing that jurisdiction exists.  *Id.*  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  When a defendant

8

MEMORANDUM OF POINTS AND AUTHORITIES

brings a facial attack of subject-matter jurisdiction under Rule 12(b)(1), the court "assume[s plaintiffs' factual] allegations to be true and draw[s] all reasonable inferences in [their] favor." *Id*. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] all well-pleaded allegations of material fact as true and construe[s] them in the light most favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). However, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ," *Iqbal*, 556 U.S. at 678, or any allegations that contradict matters properly subject to judicial notice or by exhibit, *see Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

V.   **ARGUMENT**

   A.   **Plaintiffs' Takings Claims Are Unripe**

A case must be ripe for review to be justiciable under Article III of the U.S. Constitution. *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991). Ripeness is a component of Article III's requirement that any suit in federal court present a case or controversy. *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 579 (1985). It is "peculiarly a question of timing" that "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 580. Ripeness often overlaps with the injury-in-fact requirement of standing. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). If a case is not ripe for adjudication, then courts lack subject matter jurisdiction and should dismiss on that basis. *St. Clair v. City of Chico*, 880 F.2d 199, 201–02 (9th Cir. 1989). "The burden

9

of establishing ripeness . . . rests on the party asserting the claim." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).[5]

A claim is not ripe, for example, when it is contingent upon "future events that may not occur as anticipated, or indeed may not occur at all." *Union Carbide*, 473 U.S. at 580–81 (cleaned up); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200–01 (1983); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Thus, in *Chandler*, a lawsuit was unripe when an insured sought recovery from their insurance company for damages in excess of the insured's policy coverage without first suing the third-party tortfeasor and showing the insured was unable to recover the sums they claim they were owed. 598 F.3d at 1123; *cf. In re BofI Holding Shareholder Litig.*, 3:15-cv-02722-GPC-KSC, 2018 U.S. Dist. LEXIS 96155, at **23-30 (S.D. Cal. Jun. 7, 2018) (derivative shareholder litigation not ripe when alleged injury depends on liability from pending securities whistleblower litigation "regarding the same conduct").

Plaintiffs make as-applied Takings claims based primarily on their alleged inability to evict non-paying tenants. But their claims are not ripe: Plaintiffs do not allege the City's law has been applied to them, that is, that they have sought any eviction for failure to pay rent, that any of their tenants have invoked and qualify for the protections offered by the City (or State or County), or indeed any involvement in any eviction proceeding.[6]

---

[5] Although *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), overruled the requirement in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that plaintiffs first seek and be denied just compensation under state law procedures before bringing a federal Takings claim under Section 1983, *Knick* did not overrule *Williamson*'s finality requirement. *Knick* also does not alter other constitutional ripeness considerations that must be satisfied to invoke federal jurisdiction.

[6] In an as-applied challenge, Plaintiffs must demonstrate that a particular application of the City's law violated their constitutional rights—here, they would need to allege they would have been entitled to evict their tenants but cannot because of the City's law. *See Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (discussing difference

10

MEMORANDUM OF POINTS AND AUTHORITIES

*See Yee v. City of Escondido*, 503 U.S. 519, 528 (1992) (no "as-applied" case where mobilehome owner did not run "gauntlet" of applying for change of use of land). Instead, Plaintiffs argue that LAMC § 49.99.2.A is a "taking" because they have "lost" rents from tenants who have "taken advantage" of the City's moratorium and withheld rent.  Compl. ¶¶ 51, 52.  Plaintiffs' injury relies on a chain of conjecture:  we must assume those withholding tenants are protected by the City's moratorium; that Plaintiffs will be unable to obtain missed rent in the future because those tenants will never have the means to pay or will depart without paying missed rent; that Plaintiffs could replace them with paying tenants; and that the missed rent will be uncollectible in the future (through a civil action, government assistance, or otherwise).  *Id.* ¶¶ 4, 73.  Plaintiffs also speculate they will not be able to recover for alleged damage inflicted by unauthorized pets or individuals.  *Id.* ¶ 55.  Whether any Plaintiff "may be unable to collect a monetary judgment against some unascertained third party at the conclusion of some unrelated, separate suit that has yet to, and may never, be filed in the first instance" is entirely conjecture.  *See AAGLA*, 500 F. Supp. 3d at 1101 (possibility that tenants may be insolvent does not show irreparable harm).

Thus, whether Plaintiffs will "lose" any rent owed or suffer damages because of the City's law is contingent on events that have not occurred and may never occur.  The City has not relieved any contractual obligation to pay rent nor has it eliminated Plaintiffs' legal avenues for collecting rent.  Instead, it may have delayed Plaintiffs' immediate pursuit of summary evictions against tenants who qualify for the City's protections.  Plaintiffs do not allege they have sought—and lost—an eviction case based on the City's law, as opposed to the state protections or some other applicable eviction defense.  Plaintiffs also do not allege they have sought and been denied any governmental

---

between facial versus as-applied claims); *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1356-58 (Fed. Cir. 2002) (distinguishing facial versus as-applied takings claims).

MEMORANDUM OF POINTS AND AUTHORITIES

rental assistance, which currently under state law they are required to seek before they can file a summary eviction action against their tenants.  And even though the City's law does not limit a landlords' ability to seek unpaid rent through other means, Plaintiffs have not alleged they have attempted and cannot enforce their other remedies.  As to pets and unauthorized occupants:  Plaintiffs do not allege they have been denied the ability to recover costs for any alleged "damage" unauthorized occupants and pets may have caused.  Finally, if Plaintiffs are paid their "lost rent" through government renter's relief, then their claims might instead be moot.

## B.   Plaintiffs Do Not Have Standing

To bring this suit, Plaintiffs must satisfy the familiar three-part test for Article III standing:  (1) injury in fact, (2) that is "fairly traceable" to the challenged conduct of the City, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  To have standing, they must prove it is likely, not merely speculative, that the relief they request will redress the injury they seek to avoid.  *Id.*  Relief from one law cannot redress a claimed injury if the relief leaves in place another law causing the same injury.  *See*, *e.g.*, *Nuclear Info. & Res. Serv. v. NRC*, 457 F.3d 941, 955 (9th Cir. 2006) ("[N]othing requires DOT to revisit its identical exemption standards."); *Clark v. City of Lakewood*, 259 F.3d 996, 1008-09 (9th Cir. 2001) ("an intervening, unchallenged" ordinance "prevented the district court from granting" relief); *Maverick Media Grp., Inc. v. Hillsborough Cty., Fla.*, 528 F.3d 817, 820–21 (11th Cir. 2008); *American Waterways Operators v. U.S. Coast Guard*, __ F. Supp. 3d __, 2020 WL 360493, at *4 (D. Mass. Jan. 22, 2020); *accord Auracle*, 478 F. Supp. 3d at 219 ("redressability issues" in eviction moratorium case when "the Connecticut Judicial Branch . . . independently suspended all evictions").

Plaintiffs do not have standing because they have not alleged facts showing their injury—their alleged inability to evict—was caused by the City and can be redressed by this suit.  Though state and county laws similarly bar certain evictions of COVID-19-affected tenants, Plaintiffs fail to allege whether their tenants also qualify for those

12

MEMORANDUM OF POINTS AND AUTHORITIES

protections and do not challenge those laws.  For example, the County's protections overlap almost entirely with the City's law regarding pets, unauthorized individuals, and late fees and interest.  The state law also protects tenants who are unable to pay rent from eviction and eliminates late fees.  In fact state law goes further than the City's:  state law *eliminates* the eviction remedy for qualifying tenants for unpaid rent owed between March and August 2020 and for those tenants who pay 25 percent of their rent owed from September 2020 to September 2021.  As this Court previously observed, the "State Law goes beyond the Moratorium in ways that are more burdensome on landlords," by "essentially forgiv[ing], for eviction purposes (and eviction purposes only), 100% of six months' rent."  *AAGLA*, 500 F. Supp. 3d at 1102.  The State law has also "essentially forgiven," for eviction purposes, up to 75 percent of rent for an additional thirteen months.  The State law also requires Plaintiffs to seek rent relief before they can begin an eviction, which they have not alleged they have done.  The City moratorium has no similar provisions.  Thus, for tenants protected from eviction under State law, Plaintiffs have no choice but to pursue other remedies to collect unpaid rent, including potentially trying to collect on "illusory" judgments.  Compl. ¶ 73.  Under Plaintiffs' theory, a landlord's ability to collect rent "on time" or threaten eviction has been denied beginning at the state level.

Therefore, according to their theory, Plaintiffs would be in the same position as they are in now, with or without the City's law.  Plaintiffs' failure to challenge state or county law, at the very least, shows they cannot demonstrate the *City's* law is causing Plaintiffs their claimed harm.  *See Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (no causation or redressability when harm would occur independent of the challenged law); *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (no causation when plaintiffs failed to challenge statute causing same harm).  By only targeting the nearest government, Plaintiffs seek incomplete relief.

### C.    <u>Plaintiffs Do Not Plead a Compensable Taking under the U.S. or California Constitutions</u>

Even setting aside jurisdictional issues, Plaintiffs have not alleged any compensable taking.  The Takings clauses of the State and Federal Constitutions provide owners "just compensation" only when their property is "taken for public use."  *San Remo Hotel v. City and Cty. of San Francisco*, 27 Cal. 4th 643, 664 (2002) (Takings Clauses of California and Federal Constitutions analyzed "congruently"); *Kavanau v. Santa Monica Rent Control Bd.*, 16 Cal. 4th 761, 770 (1997); *Boxer v. City of Beverly Hills*, 246 Cal. App. 4th 1212, 1218 (2016).[7]  Thus, Plaintiffs must show both that the City "took" property and failed to provide compensation.  *MacDonald v. Cty. of Yolo*, 477 U.S. 430, 350 (1986).

Courts have recognized two types of takings for which compensation is owed:  *per se* and regulatory takings.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency ("TRPA")*, 535 U.S. 302, 321–22 (2002).  A *per se* taking involves "a direct government appropriation or [permanent] physical invasion of private property."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 538 (2005).  A regulatory taking is categorical when "no productive or economically beneficial use of land is permitted" or "non-categorical" with "anything less" than a "total loss."  *TRPA*, 535 U.S. at 330–31.  A non-categorical regulatory taking occurs only if regulation goes "too far" under the factors set forth in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1026–27 (1992).

Plaintiffs have not alleged a *per se* or regulatory taking and, although there is rent relief, Plaintiffs have not alleged they have applied for and denied any, so the City has

---

[7] Article I, section 19 of the California Constitution also requires "just compensation" when a property is physically damaged by a public improvement.  *Pac. Shores Prop. Owners Ass'n v. Dep't of Fish & Wildlife*, 244 Cal. App. 4th 12, 44 (2016).  Plaintiffs have not alleged any facts demonstrating their properties have been so damaged.

MEMORANDUM OF POINTS AND AUTHORITIES

not denied Plaintiffs compensation if any compensable taking has, in fact, occurred.
Their Takings claims should be dismissed.

### 1.   The City's Temporary Eviction Protections Do Not Cause Permanent Physical Invasion of Plaintiffs' Properties

Plaintiffs' physical taking claim fails because local governments do not "commit a physical taking when [they] restrict[] the circumstances in which tenants may be evicted." *Cuomo*, 469 F. Supp. 3d at 163; *see also Troy, Ltd. v. Renna*, 727 F.2d 287, 300 (3d Cir. 1983) (state law extending leasehold of elderly and disabled tenants for forty years not a physical taking).  The Supreme Court "has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982) (citing cases); *accord Yee*, 503 U.S. at 528–29; *FCC v. Florida Power Corp.*, 480 U.S. 245, 252 (1987); *MHC Financing L.P. v. City of San Rafael*, 714 F.3d 1118, 1126–27 (9th Cir. 2013).

Eviction controls like the City's moratorium, in particular, are not physical takings because they do not require "the landlord to <u>submit</u> to the physical occupation of his land." *Yee*, 503 U.S. at 527 (emphasis added).  In *Yee*, mobile home park owners challenged a municipal rent control ordinance that, among other things: (a) limited the reasons mobile home tenants may be evicted, (b) restricted the ability of park owners to approve subsequent tenants, (c) forbade park owners from evicting tenants for tenants who paid higher rent, and (d) required a lengthy closure process to convert mobile home parks to another use.  503 U.S. at 526–28.  According to the park owners, the ordinance "transferred a discrete interest in land—the right to occupy the land indefinitely at submarket rent—from the park owner to the [tenant]." *Id.* at 527.  The Supreme Court ruled that the law did not "require[] the landowner to submit to the physical occupation of his land" because the owners "voluntarily open[ed] their property to occupation by

others" and therefore "cannot assert a *per se* right to compensation based on their ability to exclude particular individuals." *Id.* at 531.

Here, the City's eviction moratorium is not a physical taking because Plaintiffs voluntarily rented their land to others.  The City's law, rather than operating as a *per se* taking, regulates Plaintiffs' ability to evict invited tenants, like in *Yee*.  In other words, Plaintiffs' voluntary participation in the rental market means governments may regulate the conditions by which tenants are evicted without being liable for a *per se* taking.  And although Plaintiffs assert a right to evict and exclude tenants who have been affected by the COVID-19 pandemic, that by itself is insufficient under *Yee* because the landlords there too claimed a right to exclude certain mobile home park tenants.[8]  Courts evaluating other COVID-19 eviction moratoria have repeatedly relied on *Yee* to reject physical takings theories like Plaintiffs'.  *Jevons*, 2021 U.S. Dist. LEXIS 183567, at **45–47; *SCRHA*, 2021 U.S. Dist. LEXIS 139970, at **23–24; *Cuomo*, 469 F. Supp. 3d at 163; *Auracle*, 478 F. Supp. 3d at 220–21; *Walz*, 510 F. Supp. 3d at 812; *Baptiste*, 490 F. Supp. 3d at 388.

Additionally, the City's eviction protections are not permanent.  Although *Yee* recognizes the Court might have analyzed differently a law compelling a landlord to "refrain in perpetuity from terminating a tenancy," *Yee* 503 U.S. at 528, the City's law does not such thing.  The City's law expires at the end of the local emergency, which must be renewed every month; the portion relating to unpaid COVID-19 rent ends, by

---

[8] Stated another way, by entering into the residential rental business landlords already forfeit their claim to an unfettered right to exclude particular individuals.  *Avalon Pac.—Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*, 192 Cal. App. 4th 1183, 1190 (2011) ("A leasehold estate gives the lessee the exclusive possession of the premises against all the world, including the owner, for the term of the lease.").  That is one reason why under local and state law, landlords' ability to exclude and evict is regulated.  *Yee*, 503 U.S. at 529 (citing, *inter alia*, *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 261 (1964)); *e.g.*, Cal. Gov't Code §§ 12955-56 (prohibiting discrimination in housing); Civ. Code § 51 (Unruh Act); Civ. Code §§ 54.1 and 54.2 (Disabled Persons Act).

16

MEMORANDUM OF POINTS AND AUTHORITIES

operation of state law, by no later than May 1, 2023.  And the City's law only delays a landlord's pursuit of *some* evictions:  even during the pandemic, landlords can still evict tenants (1) in arrears before the pandemic; (2) withholding rent without a COVID-19 hardship; or (3) at-fault for any reason not covered by the ordinance.  LAMC § 49.99.2(G).  Again, under the City's eviction moratorium, tenants are still liable for rent.  Plaintiffs may charge rent, attempt to collect rent in actions outside an eviction, and evict if their tenants are not protected by the City's laws.  *AAGLA*, 500 F. Supp. 3d at 1093.  In the meantime, they have the opportunity to recover any costs of ownership through government relief, including local and state funding precisely for this purpose.  The City's law neither "reduces the amount a tenant must pay their landlord for occupying the apartments, nor forgives the tenant's rental obligations altogether, thereby allowing them to live on the landlord's property rent free."  *Cuomo*, 469 F. Supp. 3d at 164.  It is "temporary on its face, and does not disturb [] landlords' ability to vindicate their property rights; [it] is one more example of 'government regulation of the rental relationship [that] does not constitute a physical taking.'"  *Id*.

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), should not change the Court's analysis.  There, the Supreme Court ruled that a regulation requiring owners to allow uninvited unionizing activity on their private farms for several months a year caused an uncompensated *per se* taking.  *Hassid*, 141 S. Ct. at 2069, 2080.  The Court expressly distinguished between regulations conferring a third party the right to invade property and those that set the conditions by which an invited party may remain on the property.  *Id.* at 2076–77.  Here, the City's regulation falls into the latter category:  Plaintiffs voluntarily opened up their property for occupancy for rent, which they can and still collect.  By engaging in the rental business, Plaintiffs already voluntary ceded possessory interest in their rental properties to their tenants, which includes allowing their tenants, among other things, to make lawful uses of their homes.  The City's ordinance regulates how and when Plaintiffs' invited COVID-19-affected tenants may be evicted, including their tenants' invited guests and pets who would otherwise be unsheltered

17

MEMORANDUM OF POINTS AND AUTHORITIES

during the pandemic.  *SCRHA*, 2021 U.S. Dist. LEXIS 139970, at *23 ("Although renters cannot be evicted during the temporary duration of the Ordinance, landlords have not lost their right to exclude as did the owners in *Cedar Point*."); *Jevons*, 2021 U.S. Dist. LEXIS 183567, at **46-47 (distinguishing *Hassid*).

Finally, should Plaintiffs also challenge the City's ban on interest and late fees (Compl. ¶ 53), that cannot proceed under a *per se* theory.  "Statutes regulating the economic relations of landlords and tenants are not *per se* takings."  *FCC*, 480 U.S. at 252; *see also Pennell v. City of San Jose*, 485 U.S. 1, 12 n.6 (1988) (rent control is not a *per se* taking); *Colony Cove Props.*, *LLC v. City of Carson*, 888 F.3d 445, 449 (9th Cir. 2018) (rent control analyzed under *Penn Central*).  While regulations over that relationship might have the effect of transferring some wealth from one to another, like many regulations, they do not constitute "physical invasions," either.  *Yee*, 503 U.S. at 529–30; *accord Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 573 (N.D. Cal. 2019) (citations omitted); *Better Hous. for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 934 (C.D. Cal. 2020).  Although courts have recognized *per se* takings of money interest generated by a fund into which private individuals pay, the City's law misappropriates no such thing.  *E.g.*, *Eastern Enters. v. Apfel*, 524 U.S. 498, 555 (1998); *Fowler v. Guerin*, 899 F.3d 1112, 1115 (9th Cir. 2018) (government's skimming of interest from teacher retirement accounts was a *per se* taking); *Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1201 (9th Cir. 1998) (allegations that state withheld interest earned in inmate trust accounts could state a *per se* taking claim).  Rather, the City's restriction on late fees and interest is an economic regulation of the landlord-tenant relationship.  Late fees and interest in residential leases have been regulated for years.  Cal. Civ. Code § 1671.

### 2. *Plaintiffs' Takings Claim Also Fails under* Penn Central *Because They Cannot Allege the City's Laws Go "Too Far"*

Plaintiffs do not allege that the City's eviction moratorium eliminates all value in their properties.  Compl. ¶ 61.  Instead Plaintiffs admit they continue to lease their properties and most of the tenants in their 4,822 rental units are current on their rent.  *Id.*

18

¶¶ 10-22.  Therefore, Plaintiffs cannot establish a categorical regulatory taking.  *Lucas*, 505 U.S. at 1026–27.  The Complaint also does not state a regulatory takings claim, which fails as a matter of law under the relevant *Penn Central* factors.

a.  <u>The Economic Impact of the City's Regulation</u>

The first *Penn Central* factor considers "the challenged regulation's economic impact on the property owner."  *Bridge Aina Le'a, LLC v. State Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2019).  The impact is ascertained by comparing the value that the challenged regulation allegedly takes from the property with the value that remains.  *Id.* at 630–31.  Plaintiffs' Complaint does not allege facts for this comparison.  Instead, the Complaint contends that a fraction of Plaintiffs' tenants are behind on rent, those tenants do not owe late fees or interest, and Plaintiffs could not obtain financing or refinancing on their loans.  Therefore, Plaintiffs allege they may have been deprived of some immediate cash flow during the pandemic, but do not know how much rent, as of this moment, will be ultimately "lost."  Compl. ¶ 71.  These allegations are insufficient to tip this factor in their favor as a matter of law.

A restriction is not a taking merely because it may deny a property of its "highest and best use," *MacLeod v. Santa Clara Cty.*, 749 F.2d 541, 548 (9th Cir. 1984), or "place limits on the property owner's right to make profitable use of some segments of his property."  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 498 (1987); *see also SCRHA*, 2021 U.S. Dist. LEXIS 139970, at **24–25 ("It is not enough to succeed on a facial challenge to the Ordinance[s] if only a few tenants are behind on their rent.").  In analyzing whether a taking has occurred, the Court reviews "the nature and extent of the interference with rights in the *parcel as a whole*."  *TRPA*, 535 U.S. at 327. (emphasis added).  Therefore, Plaintiffs may not frame their takings claim by "narrowly defin[ing] certain segments" of their property—here, any one portion or apartment unit— to assert that the City's regulation impacts the value of their properties.  *Keystone*, 480 U.S. at 496.  They also may not narrowly focus on the rents in arrears during the period of the City's law because an interest in real property is defined by both "the metes and

19

MEMORANDUM OF POINTS AND AUTHORITIES

bounds that describe its geographic dimensions" **and** "the term of years that describes the temporal aspect of the owner's interest." *TRPA*, 535 U.S. at 327, 331.  Here, tenants still owe rent and Plaintiffs may collect it.  Even if the City's moratorium allegedly delays the collection of some rents for some period of time, Plaintiffs' properties are not "rendered valueless" because their properties "will recover value as soon as the prohibition is lifted." *Id.* at 331–32 (rejecting regulatory takings challenge based on 32-month development moratorium and disapproving district court's disaggregation of the landowners' property into temporal segments corresponding to the regulations at issue).

Moreover, the City's moratorium is not a regulatory taking even if Plaintiffs had alleged facts suggesting the regulation significantly diminishes the value of their properties.  "The mere loss of some income because of regulation does not itself establish a taking." *Colony Cove*, 888 F.3d at 451.  The Ninth Circuit has observed that a diminution in property value ranging from 75% to 92.5% does not constitute a taking, and noted that there was likely no case in "which a court has found a taking where diminution in value was less than 50 percent." *Colony Cove*, 888 F.3d at 449; *see also Rancho De Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015) (an alleged 28.53% diminution in market value may be "an inevitable consequence of the rent-control scheme but not an unconstitutional one"); *MHC*, 714 F.3d at 1128 (an 81% diminution in value would be insufficient to constitute a taking).  If a property retains value, courts generally have found that a taking has not occurred.  *See, e.g.*, *MacLeod*, 749 F.2d at 547  ("We are unwilling to equate *immediate overall* profitability with the requirement of 'economic viability.'") (emphasis added).  Plaintiffs affirmatively plead many of their tenants are still paying rent on time.  To reiterate, the City's laws require tenants to pay rent—for those tenants who qualify for its protections, they may have more time to pay rent to avoid an eviction.  That Plaintiffs allegedly cannot obtain rent on time from a portion of their tenants or charge late fees and interest on rental arrears does not show significant diminution of value of their properties.

MEMORANDUM OF POINTS AND AUTHORITIES

b.  <u>Interference with Investment-Backed Expectations</u>

The next *Penn Central* factor asks about how the challenged regulation interferes with a property owner's "distinct investment-back expectations." *Bridge Aina Le'a*, 950 F.3d at 633.  When plaintiffs do business in a regulated field, courts have rejected claims that regulatory changes have "upset" their expectations.  *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010).

The City's law governs landlord-tenant relationships that are already subject to extensive regulations.  *Ballinger*, 398 F. Supp. 3d at 577; *HAPCO*, 482 F. Supp. 3d at 351–53 (describing federal laws governing landlord-tenant relationships).  For example, absent the pandemic, preexisting laws already limited evictions for certain rental property.  *E.g.*, LAMC § 151.09 (requiring an eviction to be based on an enumerated "just cause" for rent-controlled apartments); § 151.09(A)(2)(b) (prohibiting eviction from rent-controlled apartments for unauthorized additional occupants if permission unreasonably withheld); § 151.09(D) (prohibiting eviction from rent-controlled apartments based on a change in policy to bar pets); Cal. Civ. Code § 1946.2 (requiring "just cause" evictions for certain residential rental properties); 24 C.F.R. § 982.310 (requiring cause for evictions of Section 8 voucher holders).  State law also regulates interest and late fees in residential leases.  *See, e.g.*, Cal. Civ. Code § 1671 (liquidated damages provisions in residential leases generally void).[9]  During a declared state of emergency, these landlord-tenant relations are further regulated by California's anti-price gouging statute, which, without regard for whether property is subject to rent control laws, prohibits landlords from raising rents greater than 10 percent, prohibits landlords from evicting a tenant to raise rents, and allows localities to take further, similar actions.  Cal. Pen. Code § 396(e), (f).

---

[9] Further, the City's eviction moratorium's civil remedy for tenants is similar to pre-existing state and local anti-retaliation and anti-harassment laws.  *See, e.g.*, Cal. Civ. Code §§ 1940.2, 1942.5, 1954; San Francisco Admin. Code § 37.10B; Santa Monica Mun. Code § 4.56.020.

MEMORANDUM OF POINTS AND AUTHORITIES

Further, the summary unlawful detainer proceedings Plaintiffs complain they must allegedly wait to utilize are themselves a highly-regulated statutory creation requiring strict compliance with numerous, changeable technicalities.  *Cal-American Income Prop. Fund Iv v. Ho*, 161 Cal. App. 3d 583, 585 (1984); *Childs v. Eltinge*, 29 Cal. App. 3d 843, 853 (1973).  Rules and restrictions governing these proceedings address timing, *e.g.*, Cal. Civ. Code §§ 1946.1, 1954.535, 1170.5, Cal. Gov't Code § 7060.4; tenants' right to cure, Cal. Civ. Code §§ 1161, 1162; notice requirements, *e.g., id.* § 1946.2, LAMC § 151.09; tenant defenses, Cal. Civ. Code §§ 1161, 1167, 1167.3; and stays of eviction, *id.* § 1176. "Because landlords understand that the contractual right to collect rent is conditioned on compliance with a variety of state laws, their reasonable investment-backed expectations cannot extend to absolute freedom from 'public program[s] adjusting the benefits and burdens of economic life to promote the common good.'" *Cuomo*, 469 F. Supp. 3d at 167.  Landlords, therefore, do not enjoy "a constitutional right to realize a profit from their rental properties—let alone all the profits contemplated in each of their individual rental agreements" or profits at any particular time.  *See id.*; *MacLeod*, 749 F.2d at 547. Pre-existing laws limit a landlord's ability "to extract the maximum value" from property, and Plaintiffs "knew that they operated as landlords under those rules." *Cuomo*, 469 F. Supp. 3d at 167.

### c.    Character of the Government Action

Finally, as to the third *Penn Central* factor, the character of the government action taken, the City's moratorium falls squarely within its police powers and is a "public program adjusting the burdens of economic life to promote the common good." *Cuomo*, 469 F. Supp. 3d at 168.  Like governments across the country, the City determined that an eviction moratorium was necessary to avoid displacing its residents amidst a pandemic involving a highly-communicable disease and guidelines from all levels of government calling on them to stay at home.  And the City determined interest and late fees could further compound COVID-19 affected tenants' dilemmas, causing them to self-evict or be evicted.  *AAGLA*, 500 F. Supp. 3d at 1100 n.34.  The City determined that non-

22

MEMORANDUM OF POINTS AND AUTHORITIES

essential evictions, such as for having unauthorized pets, should not occur during the pandemic to control and reduce the spread of the coronavirus by allowing residents to stay at home (the law would allow those evictions to occur following the emergency).[10] "The law[] may have burdened Plaintiffs by temporarily preventing them from removing [some] tenants for failure to pay rent." *Baptiste*, 490 F. Supp. 3d at 390.  But the law was also enacted to benefit society at large, including Plaintiffs; here, "elected officials found [the public] would be at greater risk of COVID-19 infection if displaced tenants caused or contributed to the overcrowding of other dwellings and homeless shelters, or were required to live on the streets." *Id.*

Finally, as this Court and others have observed, the City's law does not disturb the other contractual remedies available to landlords to collect any rent that is owed.  Tenants still owe rent.  Once the state of emergency ends, landlords may resume most evictions according to applicable law.  The City's ordinance does not completely eliminate the state statutory eviction remedy for unpaid rent, but merely delays its pursuit.  Therefore, the moratorium challenged here temporarily affects *one* remedy within a suite of remedies in the landlord-tenant relationship, *i.e.*, the right to evict, but it does not impact Plaintiffs' other rights, including the right to continue to collect rents, to devise property, or to engage in other lawful uses.  *E.g.*, *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979) (Property owners generally "possess a full bundle of property rights, [and] the destruction of one strand of the bundle is not a taking.").

Local governments "may, in times of emergency or otherwise, reallocate economic hardships between private parties, including landlords and their tenants, without violating

---

[10] As the Court recognized, a tenant may have an unauthorized guest (or pet) during the pandemic for a variety of reasons.  For example, "economic difficulties [may] lead to some consolidation of households and an increase in the number of inhabitants in some units."  *AAGLA*, 500 F. Supp. 3d at 1100 n.34.  To evict an entire household for this reason would have "serious public health consequences."  *Id.*  Also, the City's law does not prevent a landlord from recovering fees for damage incurred during a lease.

23

MEMORANDUM OF POINTS AND AUTHORITIES

the Takings Clause." *Cuomo*, 469 F. Supp. 3d at 168.  Indeed, numerous courts have found this factor weighs in favor of no taking in the context of COVID-19 eviction moratoria.  *E.g.*, *id.*; *Auracle*, 478 F. Supp. 3d at 223; *Walz*, 510 F. Supp. 3d at 814; *Baptiste*, 490 F. Supp. 3d at 390; *SCRHA*, 2021 U.S. Dist. LEXIS 139970, at *27.

## VI.    CONCLUSION

Plaintiffs' lawsuit is not ripe and they lack standing.  They also fail to plead a taking without compensation under either the U.S. or California Constitution.  Based on the foregoing, the Complaint should be dismissed.

Respectfully submitted,

Dated:  October 18, 2021          MICHAEL N. FEUER, City Attorney
                                  CRAIG TAKENAKA, Managing Assistant City Attorney
                                  ELAINE ZHONG, Deputy City Attorney

                                  By:  ___*/s/ Elaine Zhong*_____
                                       ELAINE ZHONG
                                       Deputy City Attorney

                                       Attorneys for Defendant
                                       CITY OF LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES