MARC SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
ROHIT NATH (316062)
rnath@susmangodfrey.com
HALLEY JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

RACHEL STEINBACK (310700)
rachelsteinback@nlsla.org
ANA ZUNIGA (281768)
anazuniga@nlsla.org
DAVID PALLACK (90083)
dpallack@nlsla.org
NEIGHBORHOOD LEGAL
SERVICES OF LOS ANGELES
COUNTY
13327 Van Nuys Blvd.
Pacoima, California 91331
Telephone: (818) 492-5240
Facsimile: (818) 896- 6647

MARK ROSENBAUM (59940)
mrosenbaum@publiccounsel.org
KATHRYN EIDMANN (268053)
keidmann@publiccounsel.org
FAIZAH MALIK (320479)
fmalik@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

RYAN M. KENDALL (324714)
rmkendall@lafla.org
BARBARA SCHULTZ (168766)
bschultz@lafla.org
LEGAL AID FOUNDATION OF
LOS ANGELES
7000 S. Broadway
Los Angeles, California 90003
Telephone: (213) 640-3986
Facsimile: (323) 613-7005

*Attorneys for Intervenor-Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHP Management Corp. et al.,<br><br>               Plaintiffs,<br><br>vs.<br><br>City of Los Angeles,<br><br>               Defendants. | Case No. 2:21-cv-06311<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:     November 22, 2021<br>COURTROOM: 9C, 9th Floor<br>JUDGE:    Hon. Dean D. Pregerson |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 22, 2021 or as soon thereafter as they may be heard in Courtroom 9C of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, the Alliance of Californians for Community Empowerment Action ("ACCE" or "ACCE Action"), Strategic Actions for a Just Economy ("SAJE") and Coalition for Economic Survival ("CES") (collectively "Proposed Intervenors") will move this Court for entry of an order permitting Proposed Intervenors to intervene as defendants as a matter of right in the above-captioned matter for the purpose of defending the rights of low-income tenants under Ordinance No. 186585, amended by Ordinance No. 186606 (collectively the "Ordinances") adopted by the City Council of the City of Los Angeles to prevent mass displacement, homelessness, and greater endangerment to public health posed by the ongoing COVID-19 pandemic.

This motion is made pursuant to Federal Rules of Civil Procedure Rule 24(a)(2) for intervention of right on the grounds that 1) this motion is timely, 2) Proposed Intervenors claim a significant protectable interest relating to the subject of the action, 3) disposition of the action may impair or impede Proposed Intervenors' ability to protect their interests, and 4) the existing parties do not adequately represent the Proposed Intervenors' interests.

In the alternative, Proposed Intervenors seek permissive intervention pursuant to Federal Rules of Civil Procedure Rule 24(b)(1)(B) on the grounds that 1) Proposed Intervenors have a claim or defense that shares with the main action a common question of law or fact, 2) there exist independent grounds for jurisdiction, and 3) this motion is timely.

This motion is based upon this Notice of Motion; the supporting Memorandum of Points and Authorities; the supporting declaration(s) of directors of Proposed Intervenors Joseph Delgado (Ex. A – hereinafter Delgado Decl.), and Cynthia Strathmann (Ex. B – hereinafter Strathmann Decl.), and Larry Gross (Ex. C –

hereinafter Gross Decl.); the supporting expert declaration of Dr. Ranit Mishori (Ex. D – hereinafter Mishori Decl.); the supporting declaration of Proposed Intervenors' counsel Halley Josephs (Ex. E – hereinafter Josephs Decl.); all documents and pleadings on file in this action; and such other oral and documentary evidence and argument as may be presented at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 19, 2021 with Plaintiffs' counsel and October 14, 2021 with Defendant City of Los Angeles's counsel. Josephs Decl. at ¶¶ 2-3. Defendant does not oppose this motion. *Id.* ¶ 2.

Dated:  October 25, 2021                         **SUSMAN GODFREY L.L.P.**

By: */s/ Halley Josephs*
_____
Halley Josephs

*Attorneys for Proposed Intervenor-Defendants*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTS ................................................................................................. 3

    A.    The City of Los Angeles Enacted Reasonable, Tailored Ordinances to Protect Public Health During an Ongoing Global Pandemic. ................................................................... 3

    B.    Plaintiffs' Lawsuit ................................................................... 8

    C.    Proposed Intervenors ............................................................. 8

III.  ARGUMENT ..................................................................................... 10

    A.    Proposed Intervenors Are Entitled To Intervene as a Matter of Right. ...................................................................................... 11

    B.    Proposed Intervenors Meet the Standards for Permissive Intervention. ............................................................................ 17

IV.   CONCLUSION .................................................................................. 19

NOTICE OF MOTION AND MOTION TO INTERVENE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apartment Assoc. of Los Angeles County, Inc. v. City of Los Angeles*,
  500 F. Supp. 3d 1088 (C.D. Cal. 2020)............................................................4, 6

*Apartment Assoc. of Los Angeles County, Inc. v. City of Los Angeles*,
  No. CV2005193DDPJEMX, 2020 WL 4501792 (C.D. Cal. Aug. 5,
  2020) ...........................................................................................................*passim*

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ..............................................................................16

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ................................................................................12

*California v. Tahoe Reg'l Planning Agency*,
  792 F.2d 775 (9th Cir.1986) .................................................................................16

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ..........................................................................12, 16

*Commonw. of Pa. v. President United States Am.*,
  888 F.3d 52 (3d Cir. 2018) ...................................................................................12

*Connolly v. Pension Ben. Guar. Corp.*,
  475 U.S. 211 (1986) ..............................................................................................18

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998)...........................................................................13, 18

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) (abrogated on other grounds) ...............................11

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011)................................................................................18

*Fresno Cty. v. Andrus*,
  622 F.2d 436 (9th Cir. 1980)................................................................................13

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ........................................................................................12

1

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) ......................................................... 13, 14

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ................................................................ 12

*Orange Cty. v. Air California*,
    799 F.2d 535 (9th Cir. 1986) ............................................................... 18

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ............................................ 11, 12, 13, 14

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ....................................................................... 12

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .................................................. 11, 13, 14

*W. States Trucking Ass'n v School*,
    No. 2:18-cv-1989-MCE-KJN, 2018 U.S. Dist. LEXIS 193481 (E.D.
    Cal. Nov. 13, 2018) ........................................................................... 12

*Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*,
    684 F.2d 627 (9th Cir. 1982) ............................................................... 16

**Ordinances**

Ordinance No. 186585 ................................................................... 2, 3, 4, 5

Ordinance No. 186606 ................................................................... 2, 3, 5, 6

**Rules**

Fed. R. Civ. P. 24 ..................................................... 11, 13, 14, 17, 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Alliance of Californians for Community Empowerment Action ("ACCE" or "ACCE Action"), Strategic Actions for a Just Economy ("SAJE") and Coalition for Economic Survival ("CES") (collectively "Proposed Intervenors") are membership organizations comprised of thousands of Los Angeles's most vulnerable tenants whose housing and health are endangered by Plaintiffs' attempt to undermine the emergency eviction protections enacted by the City of Los Angeles during the COVID-19 public health emergency under the guise of a declaration that the City's life-saving actions effect a taking of private property without just compensation in violation of the Takings Clause of the Fifth Amendment. *See* ECF No. 3, Compl. ¶ 66.

Just as it did last year in the *Apartment Association of Los Angeles County, Inc. v. City of Los Angeles* ("*AAGLA*") action, the Court should grant Proposed Intervenors' motion to intervene in this case to advocate for the distinct legal interest low-income tenants have in defending the constitutionality of the City's eviction protections.[1] *See AAGLA v. City of Los Angeles* ("*AAGLA Intervention Order*"), No. CV2005193DDPJEMX, 2020 WL 4501792, at *2-3 (C.D. Cal. Aug. 5, 2020). Like Plaintiffs here, the plaintiff in *AAGLA* seeks a declaration that the City's eviction protections effect a taking of private property under the Takings Clause of the Fifth Amendment to the U.S. Constitution. *Id.* at *1; *see AAGLA*, ECF No. 42, Third Am. Compl. at ¶¶ 10, 54, 83-84. In granting ACCE Action and SAJE's motion to intervene in the *AAGLA* case, this Court recognized that the tenants represented by Proposed Intervenors have a "significant protectable interest at stake," namely the substantial, legally protected property interest in remaining in their homes. *AAGLA Intervention Order*, 2020 WL 4501792, at *2.

---

[1] This Court permitted ACCE Action and SAJE, two of the three Proposed Intervenors here, to intervene as defendants in the *AAGLA* action.

1    Proposed Intervenors are dedicated to housing justice and tenants' rights in

2   Los Angeles. They work to help families stay in their homes, preserve affordable

3   housing, and advance equitable housing practices. ACCE Action, CES, and SAJE

4   engaged in advocacy that led to the adoption of Ordinance No. 186585 and Ordinance

5   No. 186606 (collectively the "Ordinances"), which are being challenged by

6   Plaintiffs. Proposed Intervenors seek to intervene in this matter to defend the

7   Ordinances, which are critical to protect their members and other Los Angeles tenants

8   directly impacted by COVID-19 from being forcibly displaced from their homes

9   amidst the instant public health, housing, and economic crisis.

10    Proposed Intervenors and their members are essential participants in this action

11   and are well-situated to defend the legality of the Ordinances passed by Los Angeles

12   City Council to protect tenants and the broader public. Proposed Intervenors

13   represent an interest distinct from, and are differently situated than, Defendant City

14   of Los Angeles and City officials. Proposed Intervenors' members—primarily Latinx

15   and Black individuals and families at the lowest income levels—are the parties who

16   will suffer imminent loss of their homes and potentially devastating health

17   consequences if Plaintiffs' effort to roll back the Ordinances through declaratory

18   relief (which could as a practical matter result in elimination of the Ordinances) is

19   successful. For example, on its Takings Clause claim, the plaintiff landlord

20   organization in *AAGLA* (represented by the same counsel as Plaintiffs here) seeks

21   both a declaratory judgment *and* an order enjoining enforcement of the Ordinances.

22   There is little doubt that AAGLA or its members would use a declaration from this

23   case that the Ordinances constitute a taking to try to obtain declaratory and injunctive

24   relief in the *AAGLA* case or other follow-on actions—which would jeopardize the

25   housing stability of low-income tenants served by Proposed Intervenors. *See infra*

26   Section III.A.

27    As membership organizations representing thousands of tenants, Proposed

28   Intervenors have the unique ability to provide the Court with critical facts and

2

evidence to which both Plaintiffs and Defendant lack access, including the impact of the Ordinances on tenants' health and safety. *See, e.g.*, *AAGLA Intervention Order*, 2020 WL 4501792, at *3 (finding that the City is unlikely to have access to "the experiences of particularly vulnerable tenants whose perspectives are, for a variety of reasons, not necessarily well-represented at the city level"). Proposed Intervenors have timely moved to intervene, less than three months after the filing of Plaintiffs' action and shortly after the City filed its motion to dismiss. *See id.* (finding that intervention is warranted where the interests of the City and intervenors are not necessarily completely aligned, and where the City "has yet to answer the Complaint, and it is unclear whether the City will ultimately defend some or all of the Ordinances or their constituent parts"). The Court should grant Proposed Intervenors' motion under the standard for intervention of right or, in the alternative, permissive intervention. *Id.* (concluding that ACCE Action and SAJE could intervene as of right or, in the alternative, permissively).

Proposed Intervenors respectfully request that the Court adjudicate this Motion and permit intervention prior to deciding the City's motion to dismiss. Even if the Court ultimately grants the City's motion to dismiss, deciding the intervention motion will enable Proposed Intervenors to fully participate on the merits of any appeal to the Ninth Circuit.

## II.   FACTS

### A. <u>The City of Los Angeles Enacted Reasonable, Tailored Ordinances to Protect Public Health During an Ongoing Global Pandemic.</u>

Even before the immense loss of jobs and income due to the pandemic, homelessness and housing instability represented a mass crisis in Los Angeles. Advocates and the City foresaw that the COVID-19 pandemic portended looming escalation of this ongoing catastrophe, and the City Council enacted Ordinance No. 186585, which was amended by Ordinance No. 186606, to prevent further devastation to public health. COVID-19 wrought economic havoc in California and

affected many residents' ability to make rent payments. *See AAGLA v. City of Los Angeles* ("*AAGLA I*"), 500 F. Supp. 3d 1088, 1092 (C.D. Cal. 2020) ("These economic impacts have, unsurprisingly, affected the ability of many residential tenants to make rent payments. Somewhere between one million and 1.4 million California households are behind on their rent. Approximately 14% of renter households in Los Angeles County are behind on rent, largely due to the effects of the pandemic on employment. These households include over 450,000 people in the City of Los Angeles.") (footnotes omitted).

Ordinance No. 186585 was enacted on March 27, 2020 pursuant to the City's emergency powers. The interest of the City in enacting the Ordinance is clearly laid out in the preamble, which states: "WHEREAS, during this local emergency and in the interest of protecting the public health and preventing transmission of COVID-19, it is essential to avoid unnecessary housing displacement to protect the City's affordable housing stock and to prevent housed individuals from falling into homelessness."[2]

Ordinance No. 186585 prohibits evictions for nonpayment of rent where the tenant "is unable to pay rent due to circumstances related to the COVID-19 pandemic."[3] "These circumstances include loss of income due to a COVID-19 related workplace closure, child care expenditures due to school closures, health-care expenses related to being ill with COVID-19 or caring for a member of the tenant's household or family who is ill with COVID-19, or reasonable expenditures that stem from government-ordered emergency measures."[4] Ordinance No. 186585 states that tenants may use the protections as an affirmative defense in an unlawful detainer action. Ordinance No. 186585 expressly does not "eliminate[ ] any obligation to pay lawfully charged rent," but does provide tenants a grace period up to 12 months following the expiration of the local emergency period to repay all past due rent.

---

[2] Ordinance No. 186585, CITY OF LOS ANGELES (March 27, 2020).
[3] *Id.*
[4] *Id.*

Ordinance No. 186585 provides that the tenant and landlord "may, prior to the expiration of the Local Emergency Period or within 90 days of the first missed payment, whichever comes first, mutually agree to a plan for repayment of unpaid rent selected from options promulgated by the Housing and Community Investment Department for that purpose."[5] In addition to prohibiting evictions for nonpayment of rent, Ordinance No. 186585 also prohibits no-fault evictions and evictions based on the presence of unauthorized occupants or pets, or for nuisance related to COVID-19 for the duration of the local emergency period. Finally, Ordinance No. 186585 prohibits the charging of late fees or interest and affirmatively requires landlords to provide tenants with notice of the protections of the ordinance.

Ordinance No. 186606, enacted on May 6, 2020, amended Ordinance No. 186585 in its entirety to strengthen the protections provided to tenants. As detailed in a report from the City Attorney to the City Council, the City Council felt compelled to strengthen the ordinance because of reports of owners "employing unscrupulous tactics to intimidate and coerce their tenants in ways designed to negate the protections of the City's new law."[6] Ordinance No. 186606 specifically added provisions that landlords may not evict or "endeavor to evict" tenants.[7] "Endeavor to evict" is defined as "conduct where the Owner lacks a good faith basis to believe that the tenant does not enjoy the benefits of [the Ordinance] and the Owner serves or provides in any way to the tenant: a notice to pay or quit, a notice to perform covenant or quit, a notice of termination, or any other eviction notice."[8] Further, Ordinance No. 186606 specifies the form and timing of the notice that landlords must provide to tenants of the protections in the Ordinance. In addition, Ordinance No. 186606 states that landlords may not "influence or attempt to influence, through fraud, intimidation or coercion" a tenant to pay or transfer to the landlord any money

---

[5] *Id.*
[6] *See Report from City Attorney (R20-0121)* (April 28, 2020), http://clkrep.lacity.org/onlinedocs/2020/20-0147-S19_rpt_ATTY_04-28-2020.pdf.
[7] Ordinance No. 186606, CITY OF LOS ANGELES (May 6, 2020).
[8] *Id.*

NOTICE OF MOTION AND MOTION TO INTERVENE

received by the tenant as part of any governmental relief program.[9] Finally, in order to provide tenants with a means of enforcing their rights, Ordinance No. 186606 provides them with a private right of action to enforce the ordinance.

These Ordinances are a reasonable response to the pandemic, tailored to the specific public health crisis and the vulnerabilities of immediately impacted individuals and families. They are comparable to several ordinances enacted by several other cities and counties across California.[10] Indeed, some jurisdictions have enacted ordinances that are far more protective; the Oakland City Council, for example, issued a moratorium on *all* evictions for the duration of the local emergency, exempting only evictions based on an imminent public health necessity.[11] Oakland's moratorium remains in place.[12]

In its November 2020 order denying plaintiff's motion for preliminary injunction in the *AAGLA* case, this Court documented the health and economic devastation experienced by Americans, Californians, and residents of Los Angeles:

> [The state of emergency measures required by the pandemic,] in conjunction with other coronavirus-related concerns, have had devastating economic consequences. By one estimate, over 16 million California households have lost employment income as a result of the coronavirus. Over the last six months, the unemployment rate in the Los Angeles area has ranged from 15 to 20 percent.[13]

*AAGLA I*, 500 F. Supp. 3d at 1091–92 (footnotes omitted), *aff'd*, 10 F.4th 905 (9th Cir. 2021); *see id.* at 1091 (documenting death toll of over 230,000 Americans, including 18,000 in California and 7,000 in Los Angeles, by November 2020).

___

[9] *Id.*
[10] *See, e.g.*, Fifth Revised First Supplement to the Executive Order of the Director of Emergency Services Declaring the Existence of a Local Emergency, CITY OF SANTA MONICA (June 17, 2020); Twelfth Supplement to Mayoral Proclamation Declaring the Existence of a Local Emergency Dated February 25, 2020, OFFICE OF THE MAYOR SAN FRANCISCO (April 30, 2020).
[11] *See* Ordinance No. 20-0377, CITY OF OAKLAND (May 19, 2020).
[12] *Statewide Residential Eviction Moratorium Ends – No Change for Oakland*, CITY OF OAKLAND (Sept. 30, 2021), https://www.oaklandca.gov/news/2021/statewide-residential-eviction-moratorium-ends-no-change-for-oakland.
[13] Although the unemployment rate has dropped to approximately 10%, that figure is still historically high, far surpassing the pre-pandemic rate of 4.4% in August 2019. *See LA County Unemployment Rate Drops to 10.1%*, L.A. BUS. J. (Sept. 17, 2021), https://labusinessjournal.com/news/2021/sep/17/l-county-unemployment-rate-drops-101-august-55000-/.

6

A year after the Court's ruling, COVID-19 continues to ravage the United States. Nationally, authorities have recorded over 730,000 COVID-19 deaths.[14] The death toll includes over 70,000 Californians and 26,000 people in Los Angeles County.[15] As of October 2021, approximately 100 Californians are dying of COVID-19 daily.[16] These rates are comparable to the average daily statewide death rates that followed the summer 2020 COVID-19 surge.[17] Los Angeles County is currently reporting nearly 1,000 new coronavirus cases per day.[18] "California, for all its progress, is still classified as having 'substantial' community transmission, the second-worst category on the four-tier scale set by the U.S. Centers for Disease Control and Prevention."[19] The City of Los Angeles remains in a state of emergency.[20] And Black and Latinx people continue to experience outsized health and economic devastation from the pandemic, including the highly contagious delta variant.[21]

The ongoing public health crisis and resulting economic fallout has had devastating effects on low-income renters.[22] For example, research shows that that

---

[14] *Coronavirus in the U.S.: Latest Map and Case Count* (Updated Oct. 25, 2021), N.Y. TIMES, https://www.nytimes.com/interactive/2021/us/covid-cases.html.

[15] *70,000 Californians have died from COVID-19*, L.A. TIMES (Oct. 14, 2021), https://www.latimes.com/california/story/2021-10-14/70-000-californians-have-died-from-covid-19; *COVID-19: Keeping Los Angeles Safe, Novel Coronavirus in Los Angeles County*, CITY OF LOS ANGELES (Oct. 13, 2021), https://coronavirus.lacity.org/.

[16] *See supra* note 14.

[17] *70,000 Californians have died from COVID-19*, L.A. TIMES (Oct. 14, 2021), https://www.latimes.com/california/story/2021-10-14/70-000-californians-have-died-from-covid-19.

[18] *Los Angeles County Case Summary*, COUNTY OF LOS ANGELES PUBLIC HEALTH (OCT. 23, 2021), http://publichealth.lacounty.gov/media/Coronavirus/locations.htm#case-summary.

[19] *What will it take to get out of the pandemic? California still has a long way to go*, L.A. TIMES (Oct. 14, 2021), https://www.latimes.com/california/story/2021-10-14/california-covid-timeline-around-cases-deaths-vaccines. *See also* Mishori Decl. ¶ 17.

[20] *COVID-19 Emergency Renter Protections*, LOS ANGELES HOUSING DEP'T (Oct. 19, 2021), https://housing.lacity.org/highlights/renter-protections.

[21] *As delta variant grows more prevalent, L.A. County reports largest daily increase in coronavirus cases since April*, KTLA (July 1, 2021), https://ktla.com/news/local-news/as-delta-variant-grows-more-prevalent-l-a-county-reports-largest-daily-increase-in-coronavirus-cases-since-april/. *See also* Mishori Decl. ¶ 28, 33-35, 37.

[22] *Household Pulse Survey Shows Continuing Struggle Among Lowest-Income*

NOTICE OF MOTION AND MOTION TO INTERVENE

COVID-19 cases and deaths spiked in states that lifted eviction moratoriums.[23] Even with the gradual reopening of businesses, a recent report from UCLA Anderson School of Management concluded that "the recession and recovery" from COVID-19 "has disproportionately hit lower-income Californians, exacerbating inequality in the state."[24] The report explained that "[i]ncome inequality" has been of particularly high concern "given the state's high housing costs."[25] A UCLA economist found that the Los Angeles "local economy was hit more severely than the nation by COVID-19" and "[l]ow-wage workers, in particular in restaurants, experienced more job losses than those in other sectors."[26]

## B. Plaintiffs' Lawsuit

Plaintiffs, 14 related entities that own apartment buildings in Los Angeles (collectively, "Plaintiffs"), filed this lawsuit against the City of Los Angeles challenging the legality of the Ordinances under the Takings Clause on August 4, 2021. ECF No. 1-3.  On September 13, 2021, the parties agreed to extend the time for the City to answer the complaint (or otherwise move) until October 18, 2021. ECF No. 13.  The City moved to dismiss the Complaint on October 18, 2021. ECF No. 17.

## C. Proposed Intervenors

Alliance of Californians for Community Empowerment ("ACCE") Action is a 501(c)(4) statewide multi-racial, grassroots membership organization dedicated to

---

*Renters*, NATIONAL LOW INCOME HOUSING COALITION (Sept. 17, 2020), https://hfront.org/2020/09/17/household-pulse-survey-shows-continuing-struggle-among-lowest-income-renters/.
[23] *Research suggests ending eviction moratoriums led to spikes in COVID cases and deaths*, UCLA NEWSROOM (July 26, 2021), https://newsroom.ucla.edu/releases/ending-eviction-moratoriums-increased-covid-cases; Kathryn M. Leifheit et al., *Expiring Eviction Moratoriums and COVID-19 Incidence and Mortality*, AM. J. EPIDEMIOLOGY, https://academic.oup.com/aje/advance-article/doi/10.1093/aje/kwab196/6328194.
[24] *UCLA Anderson Forecast: Solid but unspectacular growth for U.S. economy as delta variant spreads*, UCLA NEWSROOM (Sept. 29, 2021), https://newsroom.ucla.edu/releases/ucla-anderson-forecast-solid-growth-us-economy-delta-variant.
[25] *Id.*
[26] *Id.*

NOTICE OF MOTION AND MOTION TO INTERVENE

raising the voices of everyday Californians to fight and stand for economic, racial, and social justice. Delgado Decl. at ¶ 2. ACCE's campaigns center around housing justice, worker justice, and sustainable communities, and their members engage in rallies, town halls, and other actions to make their voices heard. *Id.* The organization's housing justice work focuses on helping families stay in their homes, preserving affordable housing, and pushing for equitable housing practices across California, including in Los Angeles. *Id.* Statewide, ACCE has over 16,000 dues-paying members, and about 6,000 of those members live in the Los Angeles area. *Id.* ¶ 3. ACCE organizes citywide, but predominantly in low-income and very low-income communities of color. *Id.* Their membership is predominately Black and Brown, including a significant number of undocumented Californians. *Id.* Through tenant clinics and organizing, ACCE has assisted thousands of tenants throughout the pandemic. *Id.* ¶¶ 6-8.

Founded in 1996, Strategic Actions for a Just Economy ("SAJE") is a 501(c)(3) Los Angeles-based membership organization dedicated to securing economic justice and building community power in South Los Angeles by advocating for tenant rights, healthy housing, and equitable development. Strathmann Decl. at ¶ 2. SAJE's work gives it a unique perspective on the relationship between public health and housing. *Id.* SAJE also engages in tenant organizing and in 2019, had approximately 650 members and served over 3,400 predominantly low-income people of color in Los Angeles. *Id.* ¶ 3. Its membership is comprised primarily of non-Black Latinx immigrants as well as older, single Black individuals. *Id.* ¶ 4. SAJE has assisted thousands of tenants during the pandemic, advising them of their rights as tenants and connecting them to legal services. *Id.* ¶¶ 7-12.

Coalition for Economic Survival ("CES") is a 501(c)(4) multi-racial, multi-cultural organization that has served the greater Los Angeles area for nearly 50 years. Gross Decl. ¶ 2. CES organizes low- and moderate-income people on economic and social justice issues, with a singular focus on housing and tenants' rights. *Id.* It

conducts tenants' rights clinics and advocates for the creation and protection of affordable housing, rent control, anti-displacement, housing code enforcement, and against illegal evictions. *Id.* ¶ 3. Since the COVID-19 pandemic began, CES has seen a significant increase in the number of Angelenos seeking its assistance; in the past year alone, its tenants' rights clinics received 40-60% more requests for assistance from economically vulnerable renters – primarily Black and Brown individuals and families – than ever before. *Id.* ¶¶ 3-4. While inability to pay ranks as the top concern for the renters it assists, CES has also noted a marked increase in the number and severity of complaints tenants have made about landlord harassment and habitability issues since the COVID-19 pandemic began. *Id.*

### III. ARGUMENT

The Court should grant Proposed Intervenors' motion to intervene in this action for the purpose of defending the legality of the Ordinances and securing the ongoing shelter, health, and safety of tenants impacted by COVID-19. In *AAGLA*, this Court permitted ACCE Action and SAJE to intervene in nearly identical circumstances to defend the City of Los Angeles' COVID-19 eviction ordinances against, *inter alia*, Takings Clause and Contracts Clause challenges. *AAGLA*, 2020 WL 4501792, at *1. In granting ACCE Action and SAJE's motion, which was opposed by the plaintiff, this Court held that ACCE Action and SAJE had "adequately demonstrated a significant protectable interest relating to the Ordinances" and that "their interests are not adequately represented by either" the government defendants or the landlord association plaintiff. *Id.* at *3.

This lawsuit is one of at least three actions by various landlords and landlord associations to end the Ordinances. The plaintiff in the *AAGLA* case brings a facial Takings Clause challenge to the Ordinances and seeks both declaratory and injunctive relief for its takings claim. *AAGLA*, ECF No. 42, Third Am. Compl. ¶¶ 82-84. In *AAGLA*, the plaintiff plans to petition the Supreme Court for a writ of certiorari, *see AAGLA*, ECF No. 96, pausing that case while that appellate process plays out. In

the meantime, the same counsel representing AAGLA has filed this case seeking the same declaratory judgment, plus money damages, on behalf of a specific group of property owners. If Plaintiffs prevail in this case, the plaintiff in *AAGLA* likely will try to use that ruling to support its facial challenge to the Ordinances, seeking both declaratory and injunctive relief on its takings claim. To be clear, Proposed Intervenors do not believe declaratory *or* injunctive relief is available to any plaintiff bringing a takings claim, but their interest in a fair resolution of this constitutional issue in this case is no less simply because it is brought by a particular set of landlords seeking declaratory and monetary relief.

A. <u>Proposed Intervenors Are Entitled To Intervene as a Matter of Right.</u>

Federal Rule 24(a) of the Federal Rules of Civil Procedure is construed liberally in favor of intervenors, and the Court's decision is guided primarily by practical considerations rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (abrogated on other grounds)). A district court is required to accept as true the non-conclusory allegations made in support of an intervention motion, particularly where the propriety of intervention must be determined before discovery. *Berg*, 268 F.3d at 819–20.

Federal Rule 24(a)(1) provides for intervention as of right when intervenors satisfy a four-part test: (1) the application for intervention is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the

11

action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties in the lawsuit. [27] *Id.* at 818–19.

    ***First***, Proposed Intervenors' motion is timely because it comes at "the very outset of litigation." *See W. States Trucking Ass'n v School*, No. 2:18-cv-1989-MCE-KJN, 2018 U.S. Dist. LEXIS 193481, at 3–4 (E.D. Cal. Nov. 13, 2018). The complaint was filed on August 4, 2021. Proposed Intervenors gave notice to the parties of their intent to intervene on October 14, and filed this motion less than three months after the complaint was filed, on October 25. Josephs Decl. at ¶¶ 2-3. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding all "traditional features of a timely motion" satisfied where intervenors filed their motion "less than three months after the complaint was filed"). This motion comes just a week after Defendant City of Los Angeles's motion to dismiss was filed, and before any proceedings or and any substantive rulings by the Court. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."). There can be no prejudice to other parties where the motion to intervene is filed without delay at the earliest stage of the proceedings. Additionally, Defendant does not oppose Proposed

---

[27] In the parties' discussions, Plaintiffs principally objected to this motion based on their view that Proposed Intervenors cannot establish Article III standing to intervene as of right. Ex. 1 to Josephs Decl. Proposed Intervenors do not assert new claims and will not pursue any relief in this case separate from that which the City may pursue. For that reason, they are not required to establish Article III standing to intervene as of right. *See, e.g., Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief. An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."); *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *see also Commonw. of Pa. v. President United States Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) ("Because the Little Sisters moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing" to intervene as of right) (citing *Town of Chester, supra*).

1  Intervenors' motion. Josephs Decl. ¶ 2.

2      ***Second***, Proposed Intervenors have a significant protectable interest, as this

3  Court already held in the *AAGLA* case. "An applicant has a 'significant protectable

4  interest' in an action if (1) it asserts an interest that is protected under some law, and

5  (2) there is a 'relationship' between its legally protected interest and the plaintiff's

6  claims." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)

7  (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).

8      Proposed Intervenors assert a significant protectable interest in the ongoing

9  applicability of the Ordinances' protections, which directly impact many of their

10  tenant members. The City Council enacted the Ordinances challenged by Plaintiffs

11  for the specific benefit of tenants—including the members of, and those represented

12  by, Proposed Intervenors. *See California ex rel. Lockyer v. United States*, 450 F.3d

13  436, 441 (9th Cir. 2006) (reversing the lower court and finding a significant

14  protectable interest asserted by two organizations that represented members of the

15  group protected by the challenged policy); *see also Fresno Cty. v. Andrus*, 622 F.2d

16  436, 438 (9th Cir. 1980). If Plaintiffs were successful in obtaining a declaratory

17  judgment, that could later be used to try to enjoin the Ordinances. For example, in

18  the *AAGLA* litigation, the plaintiff (represented by the same counsel as Plaintiffs

19  here) also asserts a Takings Clause claim and seeks both a declaratory judgment that

20  the Ordinances effect a taking and injunctive relief. *See, e.g.*, *AAGLA*, ECF No. 42,

21  Third Am. Compl. ¶¶ 82-84. If that relief was granted, many of Proposed Intervenors'

22  members and the tenants they represent would lose the legal right to remain in their

23  homes, be pushed into homelessness, and be exposed to greater risk from the

24  COVID-19 virus. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820

25  (9th Cir. 2001) ("The connection between this interest and the claims in the action is

26  sufficiently clear because the [agreement creating protective policies] is

27  threatened."). This is more than sufficient to satisfy Federal Rule of Civil Procedure

28  24(a)(1). *See AAGLA Intervention Order*, 2020 WL 4501792, at *2 (concluding that

ACCE Action and SAJE "lay claim to a legally protected property interest in remaining in their homes" and "have therefore adequately demonstrated a significant protectable interest relating to the Ordinances."). As explained below, a ruling in Plaintiffs' favor here could have the practical effect of compelling the City to end the Ordinances and their protections prematurely, causing an uptick in evictions and jeopardizing low-income tenants' health and housing security. *See* Delgado Decl. ¶¶ 11-18; Strathmann Decl. ¶¶ 13-16; Gross Decl. ¶¶ 6-7.

*Third*, Proposed Intervenors' interests "would be substantially affected in a practical sense by the determination made in [this] action." Fed. R. Civ. P. 24, advisory committee notes. A judgment for Plaintiffs would potentially eliminate the rights secured by the Ordinances. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) (relevant inquiry for the third prong of the test for intervention as of right is not whether the opposed outcome will "necessarily" impair Proposed Intervenors' rights, but whether such an outcome "'may' impair rights 'as a practical matter'"); *see also Berg*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"). If granted, the declaratory judgment sought here might be used by other landlords or landlord associations to try to obtain injunctive relief invalidating the Ordinances under a takings theory, like the association seeks in *AAGLA*. A finding that the Ordinances effect a taking here could very well open the floodgates to more takings lawsuits against the City, with the effect of pushing the City to sunset the protections prematurely. A flood of takings cases seeking staggering amounts in damages could potentially compel the City to end the emergency declaration, and thus the Ordinances before it is safe to do so. A

ruling in Plaintiffs' favor might require the City to confront difficult decisions about how to serve its competing constituencies (including landlords and tenants), and could effectively force the City to cut off the protections the Ordinances provide for a one-year period after the state of emergency ends. *See* Delgado Decl. ¶¶ 11-18; Strathmann Decl. ¶¶ 13-16; Gross Decl. ¶¶ 6-7.

Without the protection of the Ordinances, an uptick in evictions would likely result and many evicted tenants would be rendered homeless. *See, e.g.*, *supra* note 23 (citing study documenting increase in evictions in jurisdictions that ended COVID-19 eviction protections). Evictions would impact demand for City services related to housing and homelessness, exacerbating an already desperate situation.[28] Proposed Intervenors would need to divert resources to relocation, rent assistance, and legal support for tenants to defend against the sudden outbreak of eviction proceedings if the Ordinances were cut off prematurely. *See, e.g.*, Delgado Decl. ¶¶ 16-18; Strathmann Decl. ¶¶ 13-16; Gross Decl. ¶¶6-7. Moreover, because of the risks of exposure associated with all outcomes of displacing tenants who cannot pay rent from their homes (from moving in with another household to relocating to a homeless shelter to living outdoors), *all* evicted tenants would be at increased risk of contracting COVID-19. Mishori Decl. at ¶¶ 21–25, 34–35, 38.

Moreover, a large money judgment here no doubt would be followed by many more takings lawsuits. The City's liability for a judgment here and in sure-to-follow cases by other landlords could cause a reduction in key services relied on by low-income tenants that Proposed Intervenors represent. Thus, while the current case before the Court seeks tens of millions of dollars, which is consequential in and of itself to Proposed Intervenors, the actual financial impact of this lawsuit may be exponentially larger. *See, e.g.*, *AAGLA*, ECF No. 42, Third Am. Compl. ¶ 54 (landlord association alleging "[a] year's worth of lost rent City-wide would easily

---

[28] Blasi, G., *UD Day: Impending Evictions and Homelessness in Los Angeles*, UCLA LUSKIN INST. ON INEQUALITY AND DEMOCRACY 6 (May 28, 2020).

equate to billions of dollars in losses borne exclusively by property owners with rental properties in the City.").

In addition, Proposed Intervenors all lobbied and advocated for the passage of the Ordinances; an outcome voiding the Ordinances would overturn what Proposed Intervenors achieved last year, even before the COVID-19 delta variant wrought additional public health destruction in 2021. *See* Delgado Decl. ¶ 5; Strathmann Decl. ¶¶ 5-6; Gross Decl. ¶ 5. *See Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (holding that a public interest group had the right to intervene in an action challenging the legality of a measure which it had supported). If a taking is found here, it could also have a chilling effect on future tenant protection legislation that the City might consider adopting to the benefit of Proposed Intervenors' members and constituents.

**Fourth**, Proposed Intervenors' interests are not adequately protected by the existing parties to the action. There are three factors determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervener would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir.1986)). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898. (quoting *Arakaki*, 324 F.3d at 1086).

Proposed Intervenors represent an interest distinct from, and are differently situated than, Defendant City of Los Angeles. It is far from certain that Defendant will make all of Proposed Intervenors' arguments; indeed, Defendant lacks the information to be able to do so. Proposed Intervenors represent Los Angeles's most vulnerable tenants, primarily Latinx and Black individuals and families at the lowest

income levels, who are particularly likely to be harmed if the Ordinances are declared a taking, and if AAGLA or another landlord or association attempts to use the judgment here to invalidate (partially or in full) the Ordinances' protections. The views and circumstances of these tenants cannot be adequately represented or expressed by the City, the Mayor, or the City Council, as they work on behalf of all Los Angeles residents—including both landlord members associated with Plaintiffs and tenant members associated with Proposed Intervenors. The City in its role as Defendant also has an interest in reducing time and costs associated with litigation. While Defendant, along with the Mayor and City Council, must balance multiple interests and strike compromises, Proposed Intervenors face the highest stakes, as their members fear imminent loss of their homes and exposure to COVID-19.

Proposed Intervenors also offer necessary elements to the proceeding, as they have access to facts and evidence that Defendant does not. As membership organizations representing thousands of tenants impacted and protected by the Ordinances, Proposed Intervenors are singularly situated to provide the Court with facts and evidence regarding the protection that the Ordinances have provided to low-income tenants and their continued need for these protections, as well as the harm that would result if landlords tried to use a judgment in this action against tenants, such as to limit the enforceability of the Ordinances. *See* Delgado Decl. ¶¶ 11-17; Strathmann Decl. ¶¶ 13-16; Gross Decl. ¶¶ 6-7. Proposed Intervenors do not believe that any plaintiff *could* legally use a takings judgment here to do that, but AAGLA has asserted that a takings claim justifies injunctive relief which would void the Ordinances and enable landlords to begin evicting vulnerable tenants en masse. *See* AAGLA, ECF No. 42, Third Am. Compl. ¶¶ 82-84.

### B. Proposed Intervenors Meet the Standards for Permissive Intervention.

In the alternative, Proposed Intervenors move for permissive intervention under Federal Rule of Civil Procedure Rule 24(b)(1)(B). The Ninth Circuit applies three threshold requirements to a motion for permissive intervention: (1) the

17

intervenor's claim must share a common question of law or fact with the main action; (2) the motion must be timely; and (3) the court must have an independent basis for jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Permissive intervention is in the "broad discretion of the district court." *Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986).

All of these requirements are satisfied here, as described above. Proposed Intervenors seek to litigate the lawfulness and ongoing enforceability of the Ordinances, the motion is timely, and standing is not required where, as here, an intervenor seeks only to respond to the claims advanced by Plaintiffs. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("We therefore clarify that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."); *see also AAGLA Intervention Order*, 2020 WL 4501792, at *3 ("[T]his Court enjoys broad discretion to grant permissive intervention. . . . [I]n the absence of a right to intervene, [this Court would] grant [ACCE Action and SAJE] permission to intervene as defendants in this case."

In addition to satisfying the Rule 24(b) requirements, Proposed Intervenors offer an invaluable perspective in this litigation. As membership organizations comprised of thousands of vulnerable tenants, Proposed Intervenors have access to facts and evidence about the impact of the Ordinances that Defendant does not. They can also provide valuable perspective on how the Ordinances are the type of "public program that adjusts the benefits and burdens of economic life to promote the common good" that does not constitute a compensable taking. *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225 (1986). The Court will be aided by the inclusion of Proposed Intervenors, who bring into the courtroom the voices of those who have the most at stake in this matter and who can bring needed perspective on the burdens and harm that would result if the Ordinances were declared takings and potentially used by landlords or associations such as AAGLA to try to enjoin the Ordinances'

NOTICE OF MOTION AND MOTION TO INTERVENE

1   protections. Moreover, there is no question this case shares a common issue of law

2   and fact with the *AAGLA* case, which also involves a takings claim and request for

3   declaratory relief, and in which two of the three Proposed Intervenors have

4   intervened.

5        **IV.   CONCLUSION**

6        Proposed Intervenors ACCE, SAJE, and CES respectfully request that this

7   Court grant the motion to intervene as a matter of right or, alternatively, permissively.

8   Dated:  October 25, 2021       **SUSMAN GODFREY L.L.P.**

9

10         By: */s/ Halley Josephs*

11            MARC SELTZER
         KRYSTA K. PACHMAN

12            ROHIT NATH
         HALLEY JOSEPHS

13            hjosephs@susmangodfrey.com
         SUSMAN GODFREY L.L.P.

14            1900 Avenue of the Stars, Suite 1400
         Los Angeles, California  90067-6029

15            Telephone:  (310) 789-3100
         Facsimile:  (310) 789-3150

16            mseltzer@susmangodfrey.com
         kpachman@susmangodfrey.com

17            rnath@susmangodfrey.com
         hjosephs@susmangodfrey.com

18

19         By: */s/ Rachel Steinback*
         RACHEL STEINBACK

20            ANA ZUNIGA
         DAVID PALLACK

21            NEIGHBORHOOD LEGAL
         SERVICES OF LOS ANGELES

22            COUNTY
         13327 Van Nuys Blvd.

23            Pacoima, California 91331
         Telephone: (818) 492-5240

24            Facsimile: (818) 896- 6647
         rachelsteinback@nlsla.org

25            anazuniga@nlsla.org
         dpallack@nlsla.org

26         By: */s/ Faizah Malik*
         MARK ROSENBAUM

27            KATHRYN EIDMANN
         FAIZAH MALIK

28            PUBLIC COUNSEL
         610 S. Ardmore Avenue

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
keidmann@publiccounsel.org
fmalik@publiccounsel.org

By: */s/ Ryan M. Kendall*
RYAN M. KENDALL
BARBARA SCHULTZ
LEGAL AID FOUNDATION OF
LOS ANGELES
7000 S. Broadway
Los Angeles, California 90003
Telephone: (213) 640-3986
Facsimile: (323) 613-7005
rmkendall@lafla.org
bschultz@lafla.org

20

## **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Halley Josephs*

Halley Josephs

21

**PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 1400, Los Angeles, California 90067-6029.

On October 25, 2021, I served the foregoing document(s) described as follows:

**NOTICE OF MOTION AND MOTION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

\_\_\_\_ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

\_\_\_\_ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

_XX_ BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on October 25, 2021, at Los Angeles, California.

\_\_\_\_ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_XX_ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.


Halley Josephs_____          _/s/ Halley Josephs_____
　　　(Type or Print Name)                    (Signature)

22

1

# SERVICE LIST

2

3

| **Attorneys for Plaintiffs** | **Attorneys for Defendants** |

Douglas J Dennington
Jayson Alan Parsons
RUTAN AND TUCKER LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
714-641-5100
Fax: 714-546-9035
ddennington@rutan.com
jparsons@rutan.com

Deborah J Breithaupt
LOS ANGELES CITY ATTORNEY
OFFICE
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012
213-922-8382
deborah.breithaupt@lacity.org

Craig Takenaka
LOS ANGELES CITY ATTORNEY
OFFICE
920 City Hall East
200 North Main Street
Los Angeles, CA 90012-4130
213-978-7724
craig.takenaka@lacity.org

Elaine Zhong
LOS ANGELES CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012
213-922-8377
elaine.zhong@lacity.org

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23