O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GHP MANAGEMENT CORPORATION, | ) | Case No. CV 21-06311 DDP (JEMx) |
| Plaintiff, | ) ) | **ORDER GRANTING MOTION TO INTERVENE** |
| v. | ) ) | |
| CITY OF LOS ANGELES, | ) ) | [Dkt. 20] |
| Defendant. | ) ) | |

Presently before the court is a Motion to Intervene as defendants filed by three nonprofit organizations: Alliance for Community Empowerment ("ACCE"); Strategic Actions for a Just Economy ("SAJE"); and Coalition for Economic Survival ("CES") (collectively, "Proposed Intervenors"). Having considered the submissions of the parties, the court grants the motion and adopts the following Order.[1]

**I.  Background**

At the outset of the COVID-19 pandemic, Defendant City of Los Angeles ("the City") enacted Ordinance No. 186585, which was later updated by Ordinance No. 186606 (collectively, the "Eviction

---

[1] Defendant City of Los Angeles does not oppose the motion.

Moratorium" or "Moratorium"). Plaintiffs allege that the Eviction Moratorium "effectively precludes residential evictions." (Complaint ¶ 45.) The Moratorium prohibits landlords from terminating tenancies due to COVID-related nonpayment of rent, any no-fault reason, certain lease violations related to additional occupants and pets, or removal of rental units from the rental market. (Complaint ¶ 46.) The Moratorium further allows tenants who have missed rent payments a one-year period to pay delayed rent, starting from the end of the ongoing local emergency period. (Id.) Tenants may sue landlords and seek civil penalties for violations of the Moratorium. (Id. ¶ 49.)

Plaintiffs, comprised of (1) thirteen limited liability corporations or limited partnerships that own apartment buildings and (2) the management company that manages the buildings, own or manage nearly five thousand apartment units in Los Angeles. Plaintiffs allege that the Moratorium constitutes an uncompensated taking of private property in violation of the Fifth Amendment's Takings Clause, as well as the California Constitution's Takings Clause. Plaintiffs' Complaint seeks an award of "just compensation," costs, and attorney's fees, but does not seek to invalidate or enjoin enforcement of the Moratorium.

Proposed Intervenors now seek to intervene as defendants. ACCE is an organization engaged in "ground-up organizing to build a strong people's movement to create transformative community change." (Declaration of Joseph Delgado ¶ 2.) ACCE's housing justice campaigns focus "on helping families stay in their homes, preserving affordable housing, and pushing for equitable housing practices across California, including in Los Angeles." (Id.)

2

ACCE organizes in low and very low-income neighborhoods, and its Los Angeles membership is "predominately Black and Brown, including a significant number of undocumented Angelenos." (Id. ¶ 3.) Most of ACCE's members are severely rent burdened. (Id. ¶ 4.) Demand for ACCE's eviction defense clinics has more than doubled during the pandemic. (Id. ¶ 7.)

SAJE "serves predominantly low-income and very low-income people of color in [] South Central Los Angeles," and advocates for "tenant rights, healthy housing, and equitable development in South Los Angeles." (Declaration of Cynthia Strathmann ¶¶ 2,4.) Like ACCE, SAJE has seen a "substantial uptick" in demand for its tenant assistance services since the onset of the pandemic. (Id. ¶ 8.) CES is a "grassroots community-based organization dedicated to organizing low and moderate-income people to win economic and social justice throughout the greater Los Angeles Area." (Declaration of Larry Gross ¶ 2.) Since the pandemic began, CES, too, has seen a "marked uptick" in the number of people seeking assistance tenants' rights assistance, specifically with respect to inability to pay rent, harassment from landlords, and landlords' refusal to maintain habitable dwellings. (Id. ¶¶ 3-4.)

Proposed Intervenors seek to defend the Moratorium, without which, Intervenors posit, their members and other tenants would be forcibly displaced from their homes. (Motion at 2:6-9.)

**II. Legal Standard**

Under Federal Rule of Civil Procedure 24, a court must allow intervention by any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

3

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  An applicant meets these criteria, and may intervene as of right, if (1) the motion is timely; (2) the applicant has a "significant protectable" interest relating to the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action. California ex rel. Lockyer v. United States, 450 F.3d 436, 440 (9th Cir. 2006).  When evaluating these requirements, courts are guided by "practical and equitable considerations," and generally construe the Rule to apply "broadly in favor of proposed intervenors." Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir. 2002)) (internal quotation omitted).

Alternatively, when an intervenor cannot satisfy the four-part test for intervention as of right, courts may allow anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1)(B).

In evaluating motions to intervene, courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001)

**III. Discussion**

4

At the outset, it must be noted that Plaintiffs are not the first to challenge the Eviction Moratorium. Soon after the implementation of the Moratorium, the Apartment Association of Los Angeles, an organization that advocates on behalf of rental property owners such as Plaintiffs, brought a constitutional challenge to the Moratorium, including claims under the Takings Clause. See Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles, No. CV2005193DDPJEMX, 2020 WL 4501792, at *1 (C.D. Cal. Aug. 5, 2020) ("AAGLA"). Two of the Proposed Intervenors here, ACCE and SAJE, sought, and were permitted, to intervene as defendants in AGGLA. In AAGLA, ACCE and SAJE asserted an interest in defending tenants' "legally protected property interest in remaining in their homes." AGGLA, 2020 WL 4501792 at *2. In allowing intervention as of right, this Court determined that the City would not necessarily adequately represent or defend that interest. Id. at *3.

Here, proposed Intervenors make arguments similar to those raised in AAGLA. Proposed Intervenors assert an "interest in the ongoing applicability of the Ordinances' protections, which directly impact many of their tenant members." (Mot. at 13:8-10.) With respect to the practical effect of a disposition in this matter, Proposed Intervenors contend that a declaratory judgment in Plaintiffs' favor could be used by other landlords to obtain injunctive relief, or compel the City to, in the face of overwhelming liability for compensatory payments, end the emergency declaration and terminate the Moratorium earlier than COVID and its attendant economic effects would otherwise dictate. (Mot. at 14:21-28.) The result, Proposed Intervenors argue, would be an

5

"outbreak of eviction proceedings," a rise in homelessness, and increased risk of the spread of COVID-19. (Mot. at 15:6-18.) Proposed Intervenors argue further that, as in AAGLA, the City (1) does not share Proposed Intervenors' interests, especially insofar as the City seeks solutions that would benefit Plaintiffs themselves, and (2) does not have the knowledge or information necessary to adequately represent Proposed Intervenors' low-income members and clients' interests.

Plaintiffs here raise arguments that were also raised, and rejected, in AAGLA. Plaintiffs argue, for example, that Proposed Intervenors have failed to show that the City is incapable of representing Proposed Intervenors' interests because "[t]here is an assumption of adequacy when [a] government is acting on behalf of a constituency that it represents." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). At the same time, however, "[t]he burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." Id. Courts, including the Ninth Circuit, "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented." Id. at 1087 (collecting cases).

Oakland Bulk & Oversized Terminal, LLC v. City of Oakland is not to the contrary. As explained in AAGLA, the Oakland Bulk court concluded only that the proposed intervenors there had not met their burden to demonstrate that the governmental entity would or could not represent the intervenors' narrow set of interests.

6

Oakland Bulk, 960 F.3d 603, 620 (9th Cir. 2020); AGGLA, 2020 WL 4501792 at *3 n.1.  Here, in contrast, Proposed Intervenors have submitted evidence that their interests and the City's diverge.  As an initial matter, Proposed Intervenors' very existence is premised on the notion that governmental policies have failed to secure economic or social justice, including housing stability, for Proposed Intervenors' members.  (Delgado Decl. ¶ 2; Strathmann Decl. ¶ 2; Gross Decl. ¶ 2.)  Furthermore, with respect to the specific ordinances at issue here, although Plaintiffs are correct that Proposed Intervenors' interests coincide with those of the City to the extent that both have some desire to maintain some level of eviction protections, this Court cannot agree that Proposed Intervenors share the same "ultimate objective" as the City in light of evidence that ACCE, SAJE, and over 300 other organizations advocated for broader COVID-19 emergency protections that the City refused to adopt.  (Delgado Decl. ¶ 5; Gross Decl. ¶ 5.)

    Attempting to distinguish this case from AAGLA, Plaintiffs largely rely upon the fact that their Complaint, unlike the AAGLA plaintiff's complaint, does not seek injunctive relief invalidating or enjoining enforcement of the Eviction Moratorium.  Therefore, Plaintiffs suggest, disposition of this matter would not necessarily have any broader effect beyond the small number of private property owners who are party to this suit, and thus this case does not implicate any significant interest Proposed Intervenors may possess.  This argument is disingenuous.  Although Plaintiffs' opposition suggests that Plaintiffs are bringing an as-applied challenge to the Moratorium, none of Plaintiffs'

7

allegations appears particular to Plaintiffs. Indeed, Plaintiffs themselves assert that "[t]he takings litigation is coming, not just from Plaintiffs in this action, but from landlords throughout the City." (Opposition at 5 n.1). The fourteen Plaintiffs here, who own or manage approximately five thousand of the hundreds of thousands of rental units in Los Angeles, alone seek "an amount in excess of $100,000,000." (Complaint ¶ 8.) To contend, therefore, as Plaintiffs do, that a declaratory judgment that the Moratorium constitutes an unconstitutional taking would do nothing more than give rise to a "hyper-speculative" fear that the City might make adjustments to the Moratorium is naive, at best. Any argument that this matter presents a limited question pertaining only to a small number of litigants is not well-taken. See Fed. R. Civ. P. 24(a)(2) (permitting intervention as of right where "disposing of the action <u>may as a practical matter</u> impair or impede the movant's ability to protect it's interest") (emphasis added). Proposed Intervenors have adequately shown that this matter could affect the viability of the Moratorium's eviction protections.

**IV. Conclusion**

For the reasons stated above, Proposed Intervenors' Motion to

//
//
//
//
//
//
//

8

Intervene as defendants is GRANTED.[2]

IT IS SO ORDERED.

Dated: November 22, 2021

DEAN D. PREGERSON
United States District Judge

---

[2] Even if Proposed Intervenors could not intervene as of right, this Court would grant permission to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B). See Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977); Freedom from Religion Found., Inc. v. Geithner, 644 F.3d 836, 844 (9th Cir. 2011) ("[T]he independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims.")

9