MARC SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
ROHIT NATH (316062)
rnath@susmangodfrey.com
HALLEY JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

MARK ROSENBAUM (59940)
mrosenbaum@publiccounsel.org
KATHRYN EIDMANN (268053)
keidmann@publiccounsel.org
FAIZAH MALIK (320479)
fmalik@publiccounsel.org
TARA FORD (322049)
tford@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

RACHEL STEINBACK (310700)
rachelsteinback@nlsla.org
ANA ZUNIGA (281768)
anazuniga@nlsla.org
DAVID PALLACK (90083)
dpallack@nlsla.org
NEIGHBORHOOD LEGAL
SERVICES OF LOS ANGELES
COUNTY
13327 Van Nuys Blvd.
Pacoima, California 91331
Telephone: (818) 492-5240
Facsimile: (818) 896- 6647

RYAN M. KENDALL (324714)
rmkendall@lafla.org
BARBARA SCHULTZ (168766)
bschultz@lafla.org
LEGAL AID FOUNDATION OF
LOS ANGELES
7000 S. Broadway
Los Angeles, California 90003
Telephone: (213) 640-3986
Facsimile: (323) 613-7005

*Attorneys for Intervenor-Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHP Management Corp. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Los Angeles,<br><br>Defendants. | Case No. 2:21-cv-06311<br><br>**INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STRIKE DECLARATORY RELIEF REQUEST AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:  January 10, 2022<br>COURTROOM: 9C, 9th Floor<br>JUDGE:      Hon. Dean D. Pregerson |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 10, 2022 or as soon thereafter as they may be heard in Courtroom 9C of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, the Alliance of Californians for Community Empowerment Action ("ACCE Action"), Strategic Actions for a Just Economy ("SAJE") and Coalition for Economic Survival ("CES") (collectively "Intervenors") will move this Court for entry of an order dismissing Plaintiffs' Complaint (ECF No. 3)—and in the alternative, striking Plaintiffs' request for declaratory relief—on the following grounds pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f):

1) Plaintiffs have failed to state a claim for violation of the Takings Clause of the United States Constitution.

2) Plaintiffs have failed to state a claim for violation of the Takings Clause of the California Constitution.

and is based upon this Notice of Motion and the supporting Memorandum of Points and Authorities, as well as the Defendant City of Los Angeles's Motion to Dismiss, in which Intervenors join.

**Local Rule 7-3 Pre-Filing Conference**: This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 7, 2021. The parties were unable to reach a resolution that eliminates the necessity of a hearing on Intervenors' Motion.


Dated: December 13, 2021          **SUSMAN GODFREY L.L.P.**

By: */s/ Halley Josephs*
Halley Josephs
*Attorneys for Intervenors*

2

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   ARGUMENT .................................................................................. 1

    A.    Plaintiffs' challenge to the Ordinances as a *per se* physical
        taking fails as a matter of law. ............................................... 1

    B.    Under the *Penn Central* test, Plaintiffs cannot plausibly allege
        that the City's Ordinances effect a regulatory taking. ........................ 4

        1.    Plaintiffs have failed to plausibly allege a sufficient
            diminution in value of their properties. ..................................... 5

        2.    Plaintiffs fail to plausibly allege that the Eviction
            Moratorium undermines their "distinct investment-
            backed expectations" ....................................................... 7

        3.    Plaintiffs' regulatory takings claim fails as a matter of
            law under the character-of-the-regulation factor ......................... 9

    C.    Declaratory judgment is not available for a takings claim. .................. 9

III.  CONCLUSION ............................................................................. 11

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Ala. Ass'n of Realtors v. Dep't of Health and Human Servs.*,
  141 S. Ct. 2485 (2021) ................................................................. 2, 3

6

7

*Apache Survival Coalition v. United States*,
  21 F.3d 895 (9th Cir. 1994) ............................................................. 10

8

9

*Auracle Homes, LLC v. Lamont*,
  478 F.Supp.3d 199 (D. Conn. 2020) ................................................ 7

10

11

*Auracle Homes, LLC v. Lamont*,
  478 F. Supp.3d at 123 ...................................................................... 9

12

13

*Baptiste v. Kennealy*,
  490 F.Supp.3d 353 (D. Mass. 2020) ........................................... 9, 11

14

15

16

*Bldg. & Realty Institute of Westchester & Putnam Cnties., Inc. v. New York*,
  No. 19-CV-11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021) .................................................................................................. 3

17

18

*Cedar Point Nursery v. Hassid*,
  141 S. Ct. 2063 (2021) ............................................................. 2, 3, 4

19

20

*Cnty. of Butler v. Wolf*,
  No. 2:20-cv-677, 2020 WL 2769105 (W.D. Pa. May 28, 2020) ....... 11

21

22

*Colony Cove Props., Ltd. Liab. Co. v. City of Carson*,
  888 F.3d 445 (9th Cir. 2018).................................................... 6, 7, 9

23

24

*Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for So. California*,
  508 U.S. 602 (1993)......................................................................... 7

25

26

27

*Culinary Studios, Inc. v. Newsom*,
  No. 1:20-CV-1340 AWI EPG, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021) .................................................................................................. 10

28

*El Papel LLC v. Durkan*,
No. 2:20-CV-01323-RAJ-JRC, 2021 WL 4272323 (W.D. Wash.
Sept. 15, 2021) ................................................................................................ 3

*Elmsford Apt. Assocs., LLC v. Cuomo*,
469 F.Supp.3d 148, 164 (S.D.N.Y. 2020) .................................... 2, 6, 7, 9

*F.C.C. v. Florida Power Corp.*,
480 U.S. 245 (1987) ........................................................................................ 2

*FHA v. The Darlington, Inc.*,
*508 U.S. 358 U.S. 84, 91 (1993)* ............................................................... 7

*HAPCO v. City of Phila.*,
482 F. Supp. 3d 337 (E.D. Pa. 2020) ..................................................... 11

*Heights Apts., LLC v. Walz*,
510 F.Supp.3d 789 (D. Minn. 2020) .................................................. 2, 9

*Jevons v. Inslee*,
No. 1:20-CV-3182-SAB, 2021 WL 4443084 (E.D. Wash. Sept. 21,
2021) ........................................................................................................ 3, 4, 10

*Keystone Bituminous Coal Ass'n v. Benedictis*,
*480 U.S. 470 (1987)* ................................................................................ 4, 6

*Knick v. Twp. of Scott*,
139 S. Ct. 2162 (2019) ................................................................................ 10

*Lingle v. Chevron USA, Inc.*,
*544 U.S. 528 (2005)* ................................................................................ 5, 9

*Loretto v. Teleprompter Manhattan CATV Corp.*,
*458 U.S. 419 (1982)* ................................................................................ 2, 4

*Lucas v. South Carolina Coastal Council*,
*505 U.S. 1003 (1992) (emphasis in original)* ...................................... 5

*MHC Financing L.P. v. City of San Rafael*,
*714 F.3d 1118 (9th Cir. 2013) (an 81% diminution in value would
be insufficient to constitute a taking)* .................................................. 6

*Pakdel v. City & County of San Francisco*,
141 S. Ct. 2226 (2021) ................................................................................. 2

*Penn Central Transp. Co. v. City of New York ("Penn Central")*,
    438 U.S. 104 (1978) ...................................................................................*passim*

*Pennsylvania Coal Co. v. Mahon*,
    260 U.S. 393 (1922)........................................................................................5

*Pharm. Rsch. & Mfctrs. of Am. v. Williams*,
    525 F.Supp.3d 946 (D. Minn. Mar. 15, 2021)...................................... 10

*Pres. Council, Inc. v. Tahoe Reg'l Planning*,
    535 U.S. 302 (2002)........................................................................................5

*Rancho De Calistoga v. City of Calistoga*,
    800 F.3d 1083 (9th Cir. 2015) ......................................................................6

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ..................................................................................... 10

*S. Cal. Rental Housing Ass'n v. Cnty. of San Diego*,
    No. 3:21-CV-912-L-DEB, 2021 WL 3171919 (S.D. Cal. July 26,
    2021)..............................................................................................3, 9, 10

*Willowbrook Apartment Ass'n v. Mayor & City Council of Baltimore*,
    No. 20-CV-1818-SAG, 2021 WL 4441192 (D. Maryland, 2021)........................9

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ....................................................................................*passim*

**Statutes**

Cal. Civ. Code § 1946.2....................................................................................8

Cal. Civ. Code § 1946.2(c)................................................................................8

Cal. Civ. Code § 1947.12(a)(1) ........................................................................8


Code § 8.52.090 .................................................................................................8

L.A. Mun. Code § 151.09 ..................................................................................8

LACC § 8.52.050(C) ..........................................................................................8

LAMC § 151.06(G)(a)........................................................................................8

LAMC §§ 151.07, 151.08 ........................................................................... 8

**Rules**

Fed. R. Civ. P.12(f) .................................................................................. 11

**Constitutional Provisions**

United States Constitution Fifth Amendment Takings Clause ............................ 4, 10

## I.    **INTRODUCTION**

This lawsuit is the latest in a long line of unsuccessful challenges to state and local emergency housing measures enacted in response to the COVID-19 pandemic. At issue here are the City of Los Angeles's Eviction Ordinances (Ordinance No. 186585, amended by Ordinance No. 186606), which temporarily pause certain evictions for the duration of the City's Local Emergency Period. This Court already once rejected a bid to preliminarily enjoin the Ordinances under the Contracts Clause challenge, brought by the Apartment Association of Greater Los Angeles. This lawsuit is landlords' second bite at the apple, this time under the Taking Clause of the United States and California Constitutions. ECF No. 3, ("Compl.") ¶¶ 57–84.

Plaintiffs fall far short of plausibly alleging a violation of the Takings Clause. They raise two theories: that the Ordinances are (1) a *per se* physical taking and (2) a regulatory taking. The *per se* theory is foreclosed under *Yee v. City of Escondido*, 503 U.S. 519 (1992), which held that regulations of the landlord-tenant relationship do not amount to *per se* takings. Nor does the Complaint plausibly allege a regulatory taking under *Penn Central Transp. Co. v. City of New York* (*"Penn Central"*), 438 U.S. 104 (1978). While Plaintiffs' Complaint fails to establish any of the *Penn Central* factors, it is categorically deficient in considering the character of the City's Ordinances, which properly redistribute the benefits and burdens of economic life during an ongoing global pandemic that has severely affected the health, economic, and housing stability of the City's most vulnerable residents, including Intervenors' constituents.

In the alternative, the Court should strike Plaintiffs' request for declaratory judgment because such equitable relief is unavailable for a takings claim.

## II.    **ARGUMENT**

### A.    **Plaintiffs' challenge to the Ordinances as a *per se* physical taking fails as a matter of law.**

As set forth in the City's briefing, ECF No. 17 at 15-16, *Yee v. City of*

*Escondido* dooms Plaintiffs' *per se* takings claim. In *Yee,* the Supreme Court upheld a rent control ordinance against a physical takings challenge, reaffirming the longstanding principle "that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Yee*, 503 U.S. at 528–29. Under *Yee*, when landlords "voluntarily open their property to occupation by others," they "cannot assert a *per se* right to compensation based on their inability to exclude particular individuals." *Id.* at 531; *see also F.C.C. v. Florida Power Corp.*, 480 U.S. 245, 252 (1987) ("[S]tatutes regulating the economic relations of landlords and tenants are not *per se* takings.") (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982)). Because the Ordinance merely regulates the timing of certain types of evictions, the Complaint fails to state a *per se* takings claim. *See, e.g.*, *Elmsford Apt. Assocs. LLC v. Cuomo*, 469 F.Supp.3d 148, 164 (S.D.N.Y. 2020); *Heights Apts., LLC v. Walz*, 510 F.Supp.3d 789, 811 (D. Minn. 2020).

Plaintiffs raise two authorities in defense of their physical takings claim. First, Plaintiffs argue that a single sentence in the Supreme Court's recent stay order in *Alabama. Association of Realtors v. Department of Health and Human Servs.*, 141 S. Ct. 2485 (2021), effectively abrogated *Yee*. *See* MTD Opp. at 18; *id.* at 1-2.[1] But *Alabama Association of Realtors*, which stayed the CDC's temporary eviction moratorium, did not even involve a takings claim. The one sentence on which Plaintiffs hang their hats has nothing to do with *Yee* or the Takings Clause – it addresses whether the balance of equities in that case warranted a stay pending appeal.[2] Needless to say, the Supreme Court did not upend the nearly three decades

---

[1] Plaintiffs also point to a footnote in *Pakdel v. City & County of San Francisco*, 141 S. Ct. 2226 (2021), a case about a conversion statute and prudential ripeness, that stated the Ninth Circuit on remand "may give further consideration" to a physical takings claim under *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). *See* MTD Opp. at 19. As explained below, the *Cedar Point* decision is irrelevant here.
[2] The sentence from *Alabama Association of Realtors* on which Plaintiffs rely is: "And preventing them from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude."

2

of takings jurisprudence following *Yee* in a stay order from case that had nothing to do with the Takings Clause.

Second, Plaintiffs' reliance on *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), is misplaced. *See* Compl. ¶¶ 59–63. That case involved a California regulation that gave labor organizers the right to enter private farms. The Court concluded the regulation was a physical taking because it bore no relationship to "any risk posed to the public" and therefore "amount[ed] to simple appropriation of private property." *Id.* at 2080. As every post-*Cedar Point* decision addressing a takings challenge to a COVID-19 eviction moratorium has found, *Cedar Point* is irrelevant because the Ordinances do not force landlords to allow tenants onto their property, the landlords voluntarily invited tenants onto their properties and established contractual agreements with them. *See Jevons v. Inslee*, No. 1:20-CV-3182-SAB, 2021 WL 4443084, at *14 (E.D. Wash. Sept. 21, 2021); *El Papel LLC v. Durkan*, No. 2:20-CV-01323-RAJ-JRC, 2021 WL 4272323, at *16-17 (W.D. Wash. Sept. 15, 2021); *S. Cal. Rental Housing Ass'n v. Cnty. of San Diego*, No. 3:21-CV-912-L-DEB, 2021 WL 3171919, at *8 (S.D. Cal. July 26, 2021); *see also Bldg. & Realty Institute of Westchester & Putnam Cnties., Inc. v. New York*, No. 19-CV-11285 (KMK), 2021 WL 4198332, at *22 n.26 (S.D.N.Y. Sept. 14, 2021). As the court explained in *Jevons*, *Cedar Point* is inapposite to the analysis of a regulation that affects the landlord-tenant relationship:

> Unlike the physical appropriation of the right to exclude in *Cedar Point Nursery*, the moratorium regulates the landlords "use of their land by regulating the relationship between landlord and tenant." *Yee*, 503 U.S. at 528, 112 S.Ct. 1522. . . . Based on the undisturbed precedent of *Yee*, limitations on how a landlord may treat tenants—which they have voluntarily invited onto their properties by renting to them—and enforce their contractual rights (for a temporary period) are readily distinguishable from regulations granting a *separate right* to invade property closed to the public or most individuals. *Id.* at 527-28, 531, 112 S.Ct. 1522. . . . Plaintiffs' tenants were invited by themselves, not forced upon them by the government. . . . *Cedar Point Nursery* does not overrule *Yee* or undermine the legal underpinnings of *Yee*. Indeed, in

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021).

*Cedar Point Nursery*, the Court cited *Yee* for general takings principles, and *Yee's* holding is still binding law on this Court.

While *Cedar Point Nursery* announced that a non-continuous, intermittent easement created by California's access regulation affected a *per se* physical taking, it did not undermine or disturb the long-standing principle that "[t]he government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land." *Yee*, 503 U.S. at 527, 112 S. Ct. 152. Because the moratorium does not commit a physical appropriation of Plaintiffs' land beyond that consented by Plaintiffs in renting their units as residential properties—an industry heavily regulated by the State of Washington—the eviction moratorium does not constitute a *per se* taking under the Fifth Amendment.

*Jevons*, 2021 WL 4443084, at *14 (emphasis in original).

Like those of other state and local governments, the City's Ordinances arise from traditional background principles of the heavily regulated landlord-tenant relationship, in which landlords invited tenants onto their properties, rather than the government forcing them to open their properties in the first instance. Plaintiffs' physical takings claim should be dismissed.

B.  **Under the *Penn Central* test, Plaintiffs cannot plausibly allege that the City's Ordinances effect a regulatory taking.**

Plaintiffs also fail to state a claim for a regulatory taking as a matter of law. The Supreme Court "has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto*, 458 U.S. at 440. Plaintiffs face a "heavy burden" of demonstrating that the eviction moratorium constitutes a regulatory taking—a burden they fail to meet. *Keystone Bituminous Coal Ass'n v. Benedictis*, 480 U.S. 470, 493 (1987).

Unlike a physical occupation of property, a regulatory taking occurs when government regulation of private property "'goes too far'" or is "tantamount to a direct appropriation or ouster." *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 537 (2005) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). While a categorical regulatory taking arises in "the extraordinary circumstance where no productive or economically beneficial use of land is permitted," the eviction

4

moratorium cannot be a categorical taking because (1) the properties in question are large multiunit buildings and only a fraction of those units are impacted by the Ordinances;[3] and (2) the Ordinances are temporary and landlords may evict tenants as otherwise allowed by law after the Ordinance expires. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning*, 535 U.S. 302, 330 (2002) (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992) (emphasis in original).

To determine whether a government action constitutes a non-categorical regulatory taking, courts apply the three-factor *Penn Central* test, weighing "[1] the regulation's economic impact on the claimant, [2] the extent to which it interferes with distinct investment-backed expectations, and [3] the character of the government action." *Lingle*, 544 U.S. at 538-539; *see also Penn Central*, 438 U.S. at 124. Plaintiffs' regulatory takings claim fails as a matter of law on all three factors.

1. Plaintiffs have failed to plausibly allege a sufficient diminution in value of their properties.

Plaintiffs' regulatory takings claim should be dismissed because it flunks the first *Penn Central* factor: the economic impact of the Ordinances on Plaintiffs' properties. Under this factor, the Court examines "the nature and extent of the interference with rights in the *parcel as a whole*," *Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 327 (emphasis added), which requires "compar[ing] the value that has been taken from the property with the value that remains in the property." *Keystone*, 480 U.S. at 497. The bar to establish a taking on this factor is high: the Ninth Circuit has "observed that a diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *See Colony Cove Props., Ltd. Liab. Co. v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018); *Rancho De Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015) (an alleged

---

[3] Plaintiffs admit that, at each property in question, only some but not all tenants have invoked the Ordinance. *See, e.g.,* Compl. ¶ 10 (alleging that 918 Broadway is a "413-unit luxury apartment community," of which "[n]umerous tenants" have invoked the Ordinance); *id.* at ¶ 11 (236-unit building where "many" tenants have invoked the Ordinance); *id.* at ¶ 12 (526-unit building where "[n]umerous" tenants invoked the Ordinance).

28.53% diminution in market value may be "an inevitable consequence of the rent-control scheme but not an unconstitutional one"); *MHC Financing L.P. v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (an 81% diminution in value would be insufficient to constitute a taking).

The Complaint offers zero comparison of the value allegedly taken with the value of Plaintiffs' properties that remains, let alone plausible allegations that Plaintiffs' properties have suffered diminution of value north of 90 percent. The upshot of Plaintiffs' allegations is that some portion of tenants in each of their large, multiunit properties is behind on rent. The properties at issue contain between 128 and 760 rental units. Compl. ¶¶ 10-22. The Complaint alleges that only an unspecified fraction of the units at each of these properties—"many" or "numerous" tenants, in Plaintiffs' words—have invoked the Ordinances, meaning that Plaintiffs' income streams from all other units on their properties have been unaffected by the Ordinances.[4] As other federal courts upholding eviction moratoria have held, a multiunit property must be evaluated as a whole, and thus there is "no basis for treating the subset of rented apartments occupied by tenants facing financial hardship as a separate parcel." *Elmsford*, 469 F. Supp. 3d at 166; *Keystone*, 480 U.S. at 498 (holding that 2 percent of company's raw materials could not be treated as separate parcel under *Penn Central* analysis). Under the parcel-as-a-whole standard, the Complaint's allegations that some unspecified fraction of tenants at each of their properties have invoked the Ordinance falls far short of the threshold of diminution of value that could qualify as a regulatory taking. *Colony Cove Props.*, 888 F.3d at 451 (observing that 75% to 92.5% diminution does not constitute a taking).[5]

---

[4] Conspicuously, the Complaint does not allege that a majority, let alone 90%+, of tenants have fallen behind on rent and invoked the Ordinance.

[5] Plaintiffs' regulatory takings claim cannot be saved by the bare allegations that Plaintiffs have incurred $20 million in losses as a result of the Ordinance. The central question in the *Penn Central* analysis is the *comparison* of the property value allegedly taken and the property value remaining. While Plaintiffs have offered conclusory allegations as to the former, the Complaint contains no allegations about the value of their properties that remains.

1

2.     <u>Plaintiffs fail to plausibly allege that the Eviction Moratorium undermines their "distinct investment-backed expectations"</u>

2

3         Plaintiffs also do not plausibly allege that the Eviction Moratorium undermines

4 their "distinct investment-backed expectations" in a heavily-regulated industry. *Penn*

5 *Central*, 438 U.S. at 124. In order to state a colorable takings claim, "a purported

6 distinct investment-backed expectation must be objectively reasonable." *Colony*

7 *Cove Properties, LLC v. City of Carson*, 888 F.3d 445, 452 (9th Cir. 2018). In highly

8 regulated fields, such as the one in which Plaintiffs operate, "[t]hose who do business

9 in the regulated field cannot object if the legislative scheme is buttressed by

10 subsequent amendments to achieve the legislative end." *Concrete Pipe & Products*

11 *of California, Inc. v. Constr. Laborers Pension Tr. for So. California*, 508 U.S. 602,

12 645 (1993) (quoting *FHA v. The Darlington, Inc.*, 508 U.S. 358 U.S. 84, 91 (1993)).

13 As such, "reasonable investment-backed expectations cannot operate apart from

14 'public programs adjusting the benefits and burdens of economic life to promote the

15 common good.'" *Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199, 222 (D. Conn.

16 2020), at *15 (quoting *Penn Central*, 438 U.S. at 124). *See also Elmsford,* 469

17 F.Supp.3d at 167-168.

18         When Plaintiffs purchased their properties, they entered one of the most

19 highly-regulated industries in the country. Long before the pandemic, state and local

20 laws dictated when and for what reasons a landlord could evict a tenant. For example,

21 state and local laws require landlords to base an eviction on an enumerated "just

22 cause," which limited the permissible basis for at-fault evictions to a set of evictable

23 acts. *See* Cal. Civ. Code § 1946.2 (requiring "just cause" for evictions for certain

24 residential rental properties); L.A. Mun. Code ("LAMC") § 151.09 (requiring an

25 eviction to be based on an enumerated "just cause" for rent-controlled apartments);

26 L.A. Cnty. Code ("LACC") § 8.52.090 (same). These regulations also dictated the

27 timing of evictions. Often, tenants must first be given an opportunity to cure an

28 alleged lease violation prior to the landlord serving a notice to terminate the tenancy,

*see, e.g.*, Cal. Civ. Code § 1946.2(c), and even without the Ordinances many tenants are entitled to between 90 days and a full year before facing eviction. *See, e.g.*, LAMC § 151.23(B) (requiring a minimum of 120-days' notice to tenant if landlord intends to remove unit from market; one-year notice for tenants at least 62 years of age who lived in the unit one year or more). The Ordinances are an incremental adjustment to this existing regulatory patchwork—the Ordinances shrink the list of evictable acts, but only for the duration of the COVID-19 emergency.

   The temporary impact of the Ordinances pales in comparison to the litany of *permanent* landlord regulations that are no doubt constitutional. For example, rent control statutes in California prohibit many landlords from raising tenants' rent more than a nominal amount by state or local rent stabilization ordinances. *See* Cal. Civ. Code § 1947.12(a)(1) (limiting allowable yearly rent increases for covered properties to "5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower."); LAMC §§ 151.07, 151.08 (empowering LA City Rent Adjustment Commission to promulgated annual rent increases); LAMC § 151.06(G)(a) (limiting rent increases for additional occupants to 10 percent provided the landlord increases the rent within 60 days of actual or constructive knowledge of additional tenant); LACC § 8.52.050(C) (limiting annual rent increases for most unincorporated rent-controlled residential units to a maximum of 8 percent). Unlike the Ordinances, these tenant protections place permanent caps on the rents landlords can seek over the lifetime of their ownership, and the Ninth Circuit has left no doubt that such long-term rent-control regulations pass muster under the Takings Clause. *See Yee,* 503 U.S. 519, 529 (1992) ("Ordinary rent control often transfers wealth from landlords to tenants by reducing the landlords' income and the tenants' monthly payments . . ."); *Colony Cove*, 888 F.3d at 450-55. When viewed in light of existing landlord-tenant regulations, the Ordinance's temporary restrictions on Plaintiffs' ability to evict *some* tenants from their large residential buildings does not undermine property owners' investment-backed expectations.

3. <u>Plaintiffs' regulatory takings claim fails as a matter of law under the character-of-the-regulation factor</u>

The third factor of the *Penn Central* test – analyzing the "character of the government action" – is fatal to Plaintiffs' claims. Under the test, courts consider whether the action "amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lingle*, 544 U.S. at 539 (quoting *Penn Central*, 438 U.S. at 124). As courts across the country have repeatedly held, COVID-19 eviction moratoria like the Ordinances "are precisely the kind of public program[s] benefitting the common good that is not a compensable taking." *Heights Apartments*, 510 F.Supp.3d at 814 (ruling on a motion to dismiss that "Landlords' Takings Clause claim fails on the third *Penn Central* factor—the nature of the regulation"); *Elmsford*, 469 F. Supp.3d at 168 (noting that governments can constitutionally "in times of emergency or otherwise, reallocate economic hardships between private parties, including landlords and their tenants, without violating the Takings Clause."); *Baptiste v. Kennealy*, 490 F.Supp.3d 353, 390 (D. Mass. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp.3d at 123; *S. California Rental Housing Ass'n*, 2021 WL 3171919 at *9; *Willowbrook Apartment Ass'n v. Mayor & City Council of Baltimore*, No. 20-CV-1818-SAG, 2021 WL 4441192 (D. Maryland, 2021), at *7. These decisions are in keeping with existing Ninth Circuit jurisprudence, which has held, time and again, that the character of housing regulations weighs against a regulatory taking. *See Colony Cove Properties, LLC v. City of Carson*, 888 F.3d at 454-55. In short, Courts are consistent: ordinances like the eviction moratorium which "create a temporary shift in the burdens and benefits of the landlord-tenant relationship with the stated purpose of advancing the common good" do not constitute takings. *S. California Rental Housing Ass'n,* 2021 WL 3171919, at *9.

C. **Declaratory judgment is not available for a takings claim.**

While Plaintiffs' entire Complaint is meritless, their request for declaratory

9

relief should be stricken for the independent reason that equitable relief – including declaratory relief[6] – is unavailable as a remedy for a takings claim. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019) ("As long as just compensation remedies are available – as they have been for nearly 150 years – injunctive relief will be foreclosed."); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for public use . . . when a suit for compensation can be brought against the sovereign subsequent to the taking."); *Jevons*, 2021 WL 4443084 at *11 (denying request for declaratory relief because the sole remedy for a Takings Clause violation is "damages, not equitable relief."). In *Knick*, the Supreme Court explained that governments "need not fear that [*Knick*] will lead federal courts to invalidate their regulations as unconstitutional" because just compensation, and not invalidation, is the appropriate remedy for a taking. *Knick*, 139 S. Ct. at 2179. because. Yet that is exactly what granting Plaintiffs' request would accomplish.

Relying on *Knick*, courts across the country have uniformly rejected landlord-plaintiffs' attempts to secure declaratory relief on takings claims. *See, e.g., Jevons*, 2021 WL 4443084, at *11 (plaintiffs' request "is inappropriate because it would be the functional equivalent of an injunction against enforcement of the moratorium."); *Pharm. Rsch. & Mfctrs. of Am. v. Williams*, 525 F.Supp.3d 946, 952 (D. Minn. Mar. 15, 2021) (citing *Culinary Studios, Inc. v. Newsom*, No. 1:20-CV-1340 AWI EPG, 2021 WL 427115, at *14 (E.D. Cal. Feb. 8, 2021) (dismissing takings claim seeking declaratory relief); *Baptiste v. Kennealy*, 490 F. Supp. 3d at 390-391 (D. Mass. 2020) (same); *Cnty. of Butler v. Wolf*, No. 2:20-cv-677, 2020 WL 2769105, *4 (W.D. Pa. May 28, 2020) ("declaratory relief is not the appropriate avenue to pursue" as a remedy for a takings violation); *HAPCO v. City of Phila.*, 482 F. Supp. 3d 337, 358 & n.112 (E.D. Pa. 2020). Here too, the Court should find that Plaintiffs' request for

---

[6] Declaratory judgments are a form of equitable relief. *See Apache Survival Coalition v. United States*, 21 F.3d 895, 905 n.12 (9th Cir. 1994).

declaratory relief on their physical takings claim is barred.  In the alternative, the Court should strike their request for declaratory relief pursuant to Fed. R. Civ. P.12(f).

### III.   CONCLUSION

For the foregoing reasons, as well as those set forth in the City of Los Angeles's briefing, Intervenors respectfully request that the Court enter an order dismissing Plaintiffs' claims with prejudice.

Dated: December 13, 2021

**SUSMAN GODFREY L.L.P.**

By:  */s/ Halley Josephs*

MARC SELTZER
KRYSTA K. PACHMAN
ROHIT NATH
HALLEY JOSEPHS
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
kpachman@susmangodfrey.com
rnath@susmangodfrey.com
hjosephs@susmangodfrey.com

By:  */s/ Rachel Steinback*

RACHEL STEINBACK
ANA ZUNIGA
DAVID PALLACK
NEIGHBORHOOD LEGAL
SERVICES OF LOS ANGELES
COUNTY
13327 Van Nuys Blvd.
Pacoima, California 91331
Telephone: (818) 492-5240
Facsimile: (818) 896- 6647
rachelsteinback@nlsla.org
anazuniga@nlsla.org
dpallack@nlsla.org

By:  */s/ Faizah Malik*

MARK ROSENBAUM
KATHRYN EIDMANN
FAIZAH MALIK
TARA FORD

11

Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
keidmann@publiccounsel.org
fmalik@publiccounsel.org
tford@publiccounsel.org

By: */s/ Ryan M. Kendall*
    RYAN M. KENDALL
    BARBARA SCHULTZ
    LEGAL AID FOUNDATION OF
    LOS ANGELES
    7000 S. Broadway
    Los Angeles, California 90003
    Telephone: (213) 640-3986
    Facsimile: (323) 613-7005
    rmkendall@lafla.org
    bschultz@lafla.org

1

## __ATTESTATION__

2

3          Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatories listed,

4    and on whose behalf the filing is submitted, concur in the filing's content and have

5    authorized the filing.

6                                                    _/s/ Halley Josephs_____

7                                                    Halley Josephs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28