1 | Douglas J. Dennington (State Bar No. 173447)
ddennington@rutan.com
2 | Jayson Parsons (State Bar No. 330458)
jparsons@rutan.com
3 | RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
4 | Irvine, CA  92612
Telephone:  714-641-5100
5 | Facsimile:  714-546-9035

6 | Attorneys for Plaintiffs

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | GHP MANAGEMENT CORPORATION, a California corporation  918 BROADWAY ASSOCIATES, LLC, a Delaware limited liability company dba "Broadway Palace Apartments;" LR 9th & BROADWAY, LLC, a California limited liability company dba "Broadway Palace Apartments;" PALMER TEMPLE STREET PROPERTIES, LLC, a California limited liability company dba "The Da Vinci Apartments;" PALMER/CITY CENTER II, L.P., a California limited partnership dba "The Da Vinci Apartments;" PALMER BOSTON STREET PROPERTIES I, L.P., a Delaware limited partnership dba "The Orsini;" PALMER BOSTON STREET PROPERTIES II, L.P., a Delaware limited partnership dba "The Orsini;" PALMER BOSTON STREET PROPERTIES III, L.P., a California limited partnership dba "The Orsini;" BRIDEWELL PROPERTIES, L.P., a California limited partnership dba "Pasadena Park Place;" PALMER ST. PAUL PROPERTIES, L.P., a California limited partnership dba "The Piero Apartments;" PALMER/SIXTH STREET PROPERTIES, L.P., a California limited partnership dba "The Piero Apartments;" FIGTER LTD., a California limited partnership dba "Skyline Terrace Apartments;" WARNER CENTER SUMMIT, LTD, a California limited partnership dba

Case No. 2:21-cv-06311-DDP-(JEMx)

*Judge:  Dean D. Pregerson*

**PLAINTIFFS' OPPOSITION TO INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STRIKE DECLARATORY RELIEF REQUEST AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

DATE:  January 10, 2022
COURTROOM:    9C, 9th Floor
JUDGE:  Hon. Dean D. Pregerson

Date Action Filed:  August 4, 2021
Trial Date:  Not Set

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21

-1-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1  "Summit at Warner Center;"
   PALMER/THIRD STREET
2  PROPERTIES, L.P., a California limited
   partnership dba "The Visconti
3  Apartments,"

4              Plaintiffs,

5        vs.

6  CITY OF LOS ANGELES, and DOES
   1-25, INCLUSIVE,
7
              Defendants.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21

-2-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT ...........................................................................................1

    A.   Plaintiffs Have Sufficiently Pled a Compensable *Per Se* Taking ............................................................................................1

    B.   Plaintiffs Have Sufficently Pled a Regulatory Taking ........................5

    C.   The Court Should Not Strike Plaintiffs' Prayer for Declaratory Relief ...............................................................................10

III.  CONCLUSION .......................................................................................11

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21

-i-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1

## <u>TABLE OF AUTHORITIES</u>

2
**FEDERAL CASES**                                                    **Page(s)**

3
*Alabama Ass'n of Realtors v. Dep't of Health & Human Servs.,*
4
    141 S. Ct. 2485 (2021) ............................................................................ 4, 5

5
*Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles,*
6
    500 F. Supp. 3d 1088 (C.D. Cal. 2020) .................................................... 9

7
*Barbaccia v. Santa Clara Cty.,*
    451 F. Supp. 260 (N.D. Cal. 1978) ............................................................ 5
8

9
*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 9
10

11
*Bridge Aina Le'a, LLC v. Hawaii,*
    950 F.3d 610 (9th Cir. 2020) .................................................................... 7
12

13
*Cedar Point v. Hassid,*
    141 S. Ct. 2063 (2021) .............................................................................. 4

14
*Colony Cove Props., LLC v. City of Carson,*
15
    888 F.3d 445 (9th Cir. 2018) ....................................................... 5, 7, 9, 10

16
*FCC v. Florida Power Corp.,*
17
    480 U.S. 245 (1987) ............................................................................ 3, 10

18
*In re Daou Sys. Inc.,*
19
    411 F.3d 1006 (9th Cir. 2005) ............................................................ 7, 10

20
*Keystone Bituminous Coal Ass'n v. DeBenedictis,*
    480 U.S. 470 (1987) ............................................................................. 6, 7
21

22
*Knick v. Township of Scott,*
    139 S. Ct. 2162 (2019) ............................................................................ 11
23

24
*Knick v. Twp. of Scott,*
    862 F.3d 310 (3d Cir. 2017) ................................................................... 11

25
*Lingle v. Chevron U.S.A., Inc.,*
26
    544 U.S. 528 ............................................................................................. 5

27
*Loretto v. Teleprompter Manhattan CATV Corp.,*
28
    458 U.S. 419 (1982) ................................................................................. 5

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21

-ii-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

**Page(s)**

**FEDERAL CASES (CONT.)**

*Lucas v. South Carolina Coastal Council,*
    505 U.S. 1003 (1992) ................................................................................. 6, 7

*Pakdel v. City & Cty. of San Francisco,*
    952 F.3d 1157 (9th Cir. 2020) ...................................................................... 4

*Pakdel v. City and County of San Francisco,*
    141 S. Ct. 2226 (2021) .................................................................................. 4

*Penn Central Transportation Co. v. New York City,*
    438 U.S. 104 (1978) ............................................................... 5, 6, 7, 9, 10

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) ................................................................................... 11

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) .......................................................................... 1, 2, 3, 4, 5

**FEDERAL STATUTES**

42 U.S.C. section 1983 .................................................................................... 11

**CALIFORNIA STATUTES**

Civil Code section 1496.2 .................................................................................. 8

Mobile Home Residency Law ........................................................................ 1, 2

**OTHER AUTHORITIES**

F.R.C.P. 12(b)(6) ............................................................................................... 5

Los Angeles County Code section 8.52.090 .................................................... 8

Los Angeles Municipal Code
    section 151.09 ............................................................................................... 8
    section 151.23(B) ......................................................................................... 8

U.S. Constitution, Fifth Amendment ............................................................. 11

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21

-iii-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Intervenors recycle many of the same arguments that have already been made by the City in its own Motion to Dismiss (Dkt. 17).  Accordingly, Plaintiffs will rest largely on its Opposition to the City's Motion to Dismiss (Dkt. 37), and incorporate their arguments in opposition herein by reference.  A few additional points are worth addressing, however.

## II.   ARGUMENT

### A.   Plaintiffs Have Sufficiently Pled a Compensable *Per Se* Taking

Intervenors, like the City, lean heavily on *Yee v. City of Escondido*, 503 U.S. 519 (1992), to claim that the City's Eviction Moratorium does not constitute a *per se* physical taking.  Intervenors' Motion to Dismiss, Dkt. 43 at 1:28–4:13.  As already explained in Plaintiffs' Opposition to the City's Motion to Dismiss, *Yee* is not controlling here.  *See* Dkt. 37 at 18:12–24.  Indeed, Intervenors read *Yee* much too broadly for the proposition that once a landlord invites a tenant onto the premises via a lease agreement, then the state may permissibly regulate that relationship in any possible sense, no matter how draconian or how far beyond the reasonable expectations of the landlord and tenants.  Dkt. 43 at 1:28–2:14.  According to Intervenors' logic, once a landlord opens its property to tenants, the government is immunized from physical takings liability for all time.  *Yee* cannot be stretched so far.

In *Yee*, the petitioners asserted that the City of Escondido's rent control law for mobile homes, combined with the backdrop of the California Mobile Home Residency Law, effected a *per se* physical taking entitling the petitioners to just compensation.  503 U.S. at 524–25.  The California Mobile Home Residency Law, enacted several years earlier, imposed limits on a mobile home park owner's ability to terminate tenancies, except for the "nonpayment of rent," a mobile home owner's violation of law or park rules, or the park owner's desire to change the use of the

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21                    -1-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1    land.  *Id.* at 524.  Thereafter, the City of Escondido, along with numerous other local

2    communities, adopted traditional rent control provisions, setting rents back to 1986

3    levels and prohibiting rent increases without City Council approval.  *Id.*  The rent

4    control ordinance, as required in order to assure park owners of their constitutional

5    right to a "fair return" on rent-controlled properties, allowed park owners to apply

6    for rent increases based on 11 distinct factors the City Council was charged with

7    considering.[1]  *Id.* at 524–25.

8         Petitioners did not challenge the "rent control" provisions themselves, but,

9    instead, argued that with the backdrop of the state law placing limitations on a park

10   owner's ability to terminate leases with mobile home owners,[2] the Escondido rent

11   control law effectively "transferred a discrete interest in land—the right to occupy

12   the land indefinitely at submarket rent—from the park owner to the mobile home

13   owner."  *Id.* at 526–27.  In denying petitioners' *per se* "physical taking" theory of

14   compensation, the Court noted that the "government effects a physical taking where

15   it *requires* the landowner to submit to the physical occupation of his land."  *Id.* at

16   527.

17        The Court found the challenged law there to not "compel[] petitioners, once

18   they have rented their property to tenants, to continue doing so."  *Id.* at 527–28.

19   Unlike the City's moratorium in this case, neither the Mobile Home Residency Law,

20   nor the City's rent control law, prevented park owners from terminating tenancies

21   for failure to pay rent.  Indeed, the state's Mobile Home Residency Law expressly

22   _____

23   [1]   The factors the City Council was required to consider included 1) changes to
     CPI, 2) rent charged for comparable homes, 3) the duration of time since last

24   rent increase, 4) the cost of capital improvements made to the property, 5) changes
     in property taxes, 6) changes in any rent paid by park owner for land, 7) utility cost

25   changes, 8) operating and maintenance cost changes, 9) the necessity for any
     repairs, 10) the amount and quality of services made to tenant, and 11) any lawful

26   existing leases.  *Yee*, 503 U.S. at 524–25.

27   [2]   California's Mobile Home Residency Law prevented park owners from requiring
     the removal of individual mobile homes upon sale, *but specifically authorized park*

28   *owners to terminate tenancies for "the nonpayment of rent, the mobile home*
     *owner's violation of law or park rules, and the park owner's desire to change the*
     *use of his land."*  *Id.* at 524 (emphasis added).

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21                    -2-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1  allowed terminations of tenancies for "the nonpayment of rent." *Id.* at 524.  The

2  Court also noted that "[a] different case would be presented were the statute . . . to

3  compel a landowner over objection to rent his property or to refrain in perpetuity

4  from terminating a tenancy." *Id.* at 528.  As the Court emphasized, a "landlord's

5  ability to rent his property may not be conditioned on forfeiting the right to

6  compensation for a physical occupation." *Id.* at 531 (quoting *Loretto v.*

7  *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982)).  In the

8  landlord tenant context, compensation for a physical taking turns on the

9  "unambiguous distinction between a . . . lessee and an interloper with a government

10  license." *Id.* at 532 (quoting *FCC v. Florida Power Corp.,* 480 U.S. 245, 252–53 (1987)).

11       The City's Eviction Moratorium bears little resemblance to the Escondido

12  rent control law challenged in *Yee*.  Under the City's blanket moratorium on

13  evictions, the City has licensed defaulting tenants to continue occupying the

14  premises over the landlords' objections.  As will be demonstrated at trial, and as

15  alleged in Plaintiffs' Complaint, many of Plaintiffs' tenants have failed to pay any

16  portion of their rental obligations for the entire duration of the Moratoria (which is

17  *still* in place today). There is no better example of an "interloper with a government

18  license," as that phrase was use in both *Yee* and *Florida Power Corp.*  In contrast,

19  the park owners in *Yee* retained their fundamental ownership rights to exclude

20  defaulting mobile home owners from their properties and to evict mobile home

21  owners for the "nonpayment of rent." 503 U.S. at 524.  The park owners also

22  retained the ability to increase rents based on 11 different factors. *Id.* at 524–25.

23       This is precisely the point where *Yee* loses its potency, for now Plaintiffs are

24  compelled to continue furnishing housing and paying for all costs related thereto.  In

25  other words, the City *requires* that Plaintiffs submit to the ongoing and indefinite

26  physical occupation of their properties. "'This element of required acquiescence is at

27  the heart of the concept of occupation.'" *Id.* at 527 (quoting *Florida Power Corp.*,

28  480 U.S. at 252).

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21

-3-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1    Applying Intervenors' logic, *i.e.*, that once a landlord invites a tenant to
2   occupy property, no regulation of the relationship can amount to a *per se* physical
3   taking, is belied by the Supreme Court's June 2021 decision in *Pakdel v. City and*
4   *County of San Francisco*, 141 S. Ct. 2226 (2021). That case involved a local
5   ordinance compelling landlords to offer lifetime leases to existing tenants as a
6   condition to the landlord's application to convert a multi-family building to a
7   condominium. *Id.* at 2228. While the Ninth Circuit panel majority interpreted *Yee*
8   similar to the interpretation advanced by the City and Intervenors in this action—
9   *i.e.*, that the ordinance could not effect a physical taking because the government
10   had not compelled a condominium conversion (*see Pakdel v. City & Cty. of San*
11   *Francisco*, 952 F.3d 1157 (9th Cir. 2020), 1162 n.4)—the Supreme Court clearly
12   disagreed, inviting the Ninth Circuit on remand to reconsider the merits of the
13   petitioners' physical takings claim in light of *Cedar Point v. Hassid*, 141 S. Ct. 2063
14   (2021). *See Pakdel*, 141 S. Ct. at 2229 n.1. *Cedar Point*, of course, was a physical
15   takings case. 141 S. Ct at 2069 ("The question presented is whether the access
16   regulation constitutes a *per se* physical taking under the Fifth and Fourteenth
17   Amendments.").

18    Finally, while Intervenors and the City appear to be much more enamored
19   with various district court opinions dealing with COVID-19 eviction moratoria than
20   Supreme Court authority on the CDC's less onerous eviction moratoria, there's no
21   question that six members of the Supreme Court have determined that eviction
22   moratoria banning evictions of tenants with no guaranty of eventual recovery
23   directly intrudes on the primary and fundamental characteristic of property
24   ownership—the right to exclude. *Alabama Ass'n of Realtors v. Dep't of Health &*
25   *Human Servs.*, 141 S. Ct. 2485 (2021).

26    Intervenors' attempt to explain away *Alabama Association of Realtors* falls
27   flat. While this case's procedural posture may differ from that of *Alabama*
28   *Association of Realtors*, it is telling that in the context of the CDC's less-restrictive

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21

-4-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1    COVID-related eviction moratorium, six of nine Supreme Court Justices explicitly

2    cited *Loretto*—the watershed decision clarifying *per se* physical takings.  And not

3    only did a healthy majority of the Court cite *Loretto*, they also explained why—in

4    reviewing the equities relating to the stay order, the Court stated that "preventing

5    [landlords] from evicting tenants who breach their leases intrudes on one of the most

6    fundamental elements of property ownership—the right to exclude." *Alabama*

7    *Association of Realtors*, 141 S. Ct. at 2489 (citing *Loretto*, 458 U.S. at 435).  The

8    point here is obvious.  COVID-related eviction moratoria like that of the City's

9    intrude on Plaintiffs' fundamental right to exclude others and constitute a physical

10   occupation deserving of just compensation.  This "single line" in *Alabama*

11   *Association of Realtors*, as Intervenors stylize it, did not abrogate *Yee*, but this is

12   because *Yee* does not reach nearly as far as Intervenors contend.

13          **B.      Plaintiffs Have Sufficiently Pled a Regulatory Taking**

14          As previously explained in Plaintiffs' Opposition to the City's Motion to

15   Dismiss, regulatory takings claims are rarely susceptible to F.R.C.P. 12(b)(6)

16   motions due to the highly *fact*-driven nature of the inquiry.  *See Yee*, 503 U.S. at 522

17   (regulatory takings analysis "necessarily entails complex factual assessments of the

18   purposes and economic effects of government actions"); *see also Colony Cove*

19   *Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018); *Barbaccia v.*

20   *Santa Clara Cty.*, 451 F. Supp. 260, 266 (N.D. Cal. 1978) ("the determination of

21   whether a taking has occurred is essentially a factual one, and therefore not

22   appropriate to a motion to dismiss").  In any event, Plaintiffs have adequately pled

23   all factors necessary to state a plausible regulatory takings claim against the City's

24   Eviction Moratorium.  *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538–39

25   (under the *Penn Central* test, courts must weigh "[1] the regulation's economic

26   impact on the claimant, [2] the extent to which it interferes with distinct investment-

27   backed expectations, and [3] the character of the government action").

28          Economic Impact of the Eviction Moratorium: Intervenors misunderstand the

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21                    -5-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

nature of the "economic impact" inquiry.  Their argument assumes that Plaintiffs must plead some form of quantitative, percentage-based diminution in property values to establish a plausible regulatory takings claim.  *See* Dkt. 43 at 5:13–6:23. Not so.

Rather, the primary case cited by Intervenors to prove the point—*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987)—has long been understood to opine on "categorical" regulatory takings, later refined by *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).  In *Keystone*, the petitioners "narrowly define[d] certain segments of their property" to assert that the law challenged there "*denie[d] them economically viable use*."  480 U.S. at 495 (emphasis added).  Later, in *Lucas*, the Court clarified that when a regulation goes so far as to deny an owner of *all* economically beneficial use, such regulations constitute categorical regulatory takings.  505 U.S. at 1019.  In discussing categorical regulatory takings, the *Lucas* Court explicitly cited *Keystone* as an exemplar of such a claim: "The second situation[3] in which we have found categorical treatment appropriate is where regulation denies all economically beneficial or productive use of land."  *Lucas*, 505 U.S. at 1015 (citing *Keystone*, 480 U.S. at 495.)  Thus, plaintiffs asserting a *Lucas*-style categorical regulatory taking claims must eventually prove significant reductions in value to be successful, and indeed courts have used percentage-based diminutions as a means to assess the merit of such claims—though this is likely best accomplished after discovery has ensued and facts have been established.  *See, e.g.*, *Keystone*, 480 U.S. at 479 (district court in *Keystone* rejected plaintiff's regulatory taking claim via summary judgment).

Plaintiffs here, however, have not asserted a *Lucas*-style claim, but instead have pressed a traditional *Penn Central* claim.  *See* Plaintiffs' Complaint, Dkt. 3, ¶¶ 68–78.  Under that framework, courts must ultimately assess whether a regulation

---

[3] The first situation is, of course, physical *per se* takings.  *See Lucas*, 505 U.S. at 1015.

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21                                    -6-                    PLAINTIFFS' OPPOSITION TO
                                                                                INTERVENORS' MOTION TO DISMISS/TO
                                                                                STRIKE DECLARATORY RELIEF REQUEST

1  has gone "too far" by "engaging in . . . essentially ad hoc, factual inquiries." *Penn*

2  *Central*, 438 U.S. at 124.  As the Supreme Court has made abundantly clear, courts

3  "have generally eschewed any 'set formula' for doing so." *Lucas*, 505 U.S. at 1015

4  (quoting *Penn Central*, 438 U.S. at 124).  To boil down *Penn Central* to simple

5  numeric diminution in value—especially at the pleading stage—would fly in the

6  face of the Supreme Court's repeated admonitions that regulatory takings are

7  analyzed "ad hoc" and without adherence to any "set formula[e]." *Penn Central*,

8  438 U.S. at 124.[4]

9       In short, Plaintiffs' regulatory takings claims do not fail for lack of asserting a

10  percentage-based diminution in value to their properties—asserting lost rents to

11  show economic impact, which Plaintiffs have done, is enough to satisfy pleading

12  standards.  *See* Dkt. 3, ¶ 71 (alleging "Plaintiffs' tenants are over \$20 million in

13  arrears, to date"); *see also In re Daou Sys. Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)

14  (Plaintiffs' allegations must be accepted as true and construed in the light most

15  favorable to Plaintiffs).

16       <u>Interference with Distinct Investment-Backed Expectations</u>: Shockingly,

17  Intervenors assert that Plaintiffs have not alleged a sufficiently plausible claim that

18  the Eviction Moratorium interferes with Plaintiffs' distinct investment-backed

19  expectations because residential leasing is a "heavily-regulated industry," and thus

20  ───────────────────────────

21  [4]   The Ninth Circuit's decision in *Colony Cove* contains an erroneous explication of takings law.  In that decision, the Court asserted that in assessing the economic

22  impact prong of a *Penn Central* claim, courts "'compare the value that has been taken from the property with the value that remains in the property.'" *Colony Cove*, 888 F.3d at 450 (quoting *Keystone*, 480 U.S. at 497).  As discussed, *Keystone* is a

23  predecessor opinion to claims now governed by *Lucas*—*i.e.*, categorical regulatory takings whereby a law denies a property owner of all economically beneficial use.

24  By citing *Keystone* to prove its point, the Ninth Circuit imported an inapplicable standard into the traditional *Penn Central* analysis and appears to adopt a "set

25  formula" to reach its holding in contravention of *Penn Central*.  Moreover, *Keystone* itself is of no import here because Plaintiffs have not asserted that the City's

26  Eviction Moratorium has denied them of all economically beneficial use of their properties.  Rather, this Court must assess the economic impact prong in an

27  "essentially ad hoc" manner.  *Penn Central*, 438 U.S. at 124.  *See also Bridge Aina Le'a, LLC v. Hawaii*, 950 F.3d 610, 630–37 (9th Cir. 2020) (evaluating jury's

28  verdict finding a taking in light of evidence admitted on each of the *Penn Central* factors, implicitly recognizing that no one factor is dispositive).

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21                                    -7-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

the Eviction Moratorium does not interfere with investment-backed expectations. *See* Dkt. 43 at 7:1–8:28.

Intervenors' argument fails for several reasons.  First, Intervenors cite several state and local regulations tinkering with the landlord-tenant relationship as evidence that the Eviction Moratorium does not interfere with investment-backed expectations.  But the laws cited do not approximate the gravity of the Eviction Moratorium here.  For example, Intervenors cite regulations on "just cause" evictions (Cal. Civil Code § 1496.2; LAMC § 151.09; L.A. Cty. Code § 8.52.090), notice requirements if landlords intend to take property off the rental market (LAMC § 151.23(B)), and others.  Dkt. 43 at 7:18–8:7.  None of these laws come close to the terms of the City's Eviction Moratorium.  Indeed, the Moratorium does not merely "adjust" the rights of landlords and tenants, but instead it almost categorically eviscerates Plaintiffs' right to evict defaulting tenants.  The laws cited, compared to the Eviction Moratorium, are apples and oranges.

Second, Intervenors suggest that the "temporary impact" of the Eviction Moratorium "pales in comparison to the litany of the *permanent* landlord regulations" already in place.  Dkt. 43 at 8:8–9.  Intervenors again miss the point. While the Eviction Moratorium may end someday, its effects *today* are potentially devastating to Plaintiffs who have made significant investments in the City on the understanding that there would be recourse if tenants default via nonpayment of rent.  *See* Dkt. 3, ¶ 72 (Plaintiffs "developed and/or purchased their properties with the 'objectively reasonable' expectation that they would be able to charge rent for units and have legal recourse if tenants failed to pay rent with contractually due"); *id.* (Plaintiffs made these investments "against the backdrop of California's unlawful detainer scheme").  So while some much-lesser regulations may be permanent, the Eviction Moratorium, even if temporary, significantly interferes with distinct investment-backed expectations.

/ / /

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21

-8-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1    Finally, with all respect to Intervenors, this Court has already opined as to the
2    significance of the Eviction Moratorium and its effect on property owners like the
3    Plaintiffs.  In *Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles*,
4    500 F. Supp. 3d 1088, 1096 (C.D. Cal. 2020), in analyzing whether the City's
5    Eviction Moratorium substantially impaired existing contracts, this Court stated that
6    "the scope and nature of the COVID-19 pandemic, and of the public health
7    measures necessary to combat it, have no precedent in the modern era, and that no
8    amount of prior regulation could have led landlords to expect anything like the
9    blanket Moratorium."  This Court continued that it could not "ignore the possibility
10   that some landlords may face, at the very least, the prospects of reduced cash flow
11   and time value of missed rent payments and increased wear and tear on rental
12   properties, and that these effects were, at least in terms of degree, unforeseeable."
13   *Id.*  These concerns speak directly to whether the Eviction Moratorium interferes
14   with distinct investment-back expectations.  Plaintiffs reasonably expected to lease
15   residential apartments to tenants with recourse to unlawful detainer proceedings in
16   the event of default, and invested significant capital accordingly.  Dkt. 3, ¶ 72.  The
17   Eviction Moratorium has plainly interfered with these expectations.  *Id.*  The
18   allegations in Plaintiffs' complaint easily satisfy the plausible pleading standards on
19   this point.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (factual
20   allegations must be "enough to raise a right to relief above the speculative level").

21   <u>Character of the Government Action</u>: Lastly, Intervenors brief argument that
22   Plaintiffs do not state a claim as to the third prong of the *Penn Central* test likewise
23   lacks merit.  Citing only one Ninth Circuit opinion (the rest being district court
24   opinions with zero precedential value), Intervenors proclaim that "the character of
25   housing regulations weighs against a regulatory taking."[5]  Dkt. 43 at 9:19–22.  As

26   _____
27   [5]   The Ninth Circuit case cited by Intervenors is *Colony Cove Properties v. City of Carson*, 888 F.3d 445 (9th Cir. 2018).  In *Colony Cove*, the Ninth Circuit held that the *rent control* ordinance under review there "counsel[ed] against finding a *Penn*
28   *Central* taking" in part because the character of the government action "protect[ed] Homeowners from excessive rent increases and allow[ed] a fair return on

Rutan & Tucker, LLP
attorneys at law

560/036892-0001
17307743.2 a12/27/21                    -9-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

1   discussed above, the City's Eviction Moratorium does not merely "tinker" with

2   Plaintiffs' landlord-tenant relationship, it upends it entirely.  The City's Eviction

3   Moratorium constitutes a physical invasion of Plaintiffs' properties by its forcing

4   Plaintiffs' acquiescence to continue allowing defaulting tenants to inhabit Plaintiffs'

5   properties.  *See Florida Power Corp.*, 480 U.S. at 252 ("required acquiescence is at

6   the heart of the concept of occupation"); *see also Penn Central*, 438 U.S. at 124

7   ("[a] 'taking' may more readily be found when the interference with the property

8   can be characterized as a physical invasion by the government than when

9   interference arises from some public program adjusting the benefits and burdens of

10  economic life to promote the common good").  This is not a "temporary shift in the

11  burdens and benefits of the landlord-tenant relationship," as Intervenors claim.  Dkt.

12  43 at 9:23–24.  Rather, the Eviction Moratorium "is tantamount to a physical

13  invasion of private property" because it "effectively requires that Plaintiffs allow

14  their tenants to continue to occupy their properties free of charge," as well as

15  requiring Plaintiffs to "allow their tenants to remain in possession for the

16  foreseeable future." Dkt. 3, ¶ 74.  For purposes of the plausible pleading standards,

17  Plaintiffs have stated sufficient factual allegations to survive Intervenors' Motion to

18  Dismiss.  *In re Daou Sys. Inc.*, 411 F.3d at 1013 (the Court must "accept the

19  plaintiffs' allegations as true and construe them in the light most favorable to

20  plaintiffs").

21      C.    <u>The Court Should Not Strike Plaintiffs' Prayer for Declaratory</u>

22            <u>Relief</u>

23          Intervenors contend that "declaratory relief" is not available in takings cases.

24  Dkt. 43 at 9:28–11:3.  In support of this proposition, they cite two Supreme Court

25

26  investment to the Park Owner." *Id.* at 454 (quoting *MHN Fin. LTD v. City of San
    Rafael*, 714 F.3d 11138 (9th Cir. 2013).  While a rent control ordinance may qualify
27  as a "public program adjusting the benefits and burdens of economic life" (*see id.*
    (quoting *Penn Central*, 438 U.S. at 124)), the City's Eviction Moratorium is far
28  different and significantly more serious.  It blinks reality to consider the Moratorium
    a mere "housing regulation" as Intervenors suggest.  Dkt. 43 at 9:19–22.

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21

-10-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST

cases, *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019), and *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016 (1984), as standing for such a proposition.  It is an odd argument, indeed, since *Knick* itself was filed under both 42 U.S.C. § 1983, and the Declaratory Relief Act.  *See, e.g.*, *Knick v. Twp. of Scott,* 862 F.3d 310, 316 (3d Cir. 2017) (noting that Knick's second amended complaint in federal court action sought declaratory and injunctive relief that the ordinance "unconstitutionally [took] Knick's property").  While Plaintiffs readily acknowledge that injunctive relief is generally not available to enjoin a taking where the remedy of "just compensation" is available, no Supreme Court decision stands for the proposition that a takings plaintiff may not receive a "declaration" of taking in connection with its just compensation claims.

To be clear, Plaintiffs here do not seek any form of injunctive relief to enjoin the taking.  Candidly, the "declaration" sought in this case is not necessary and is duplicative of the determination of a taking that runs part and parcel with their Fifth Amendment claims.  Because this case reflects an "as applied" takings claim, the declaration sought necessarily would be limited to a declaration of taking as applied to Plaintiffs' properties.  This is no different than the as-applied declaration sought in connection with the plaintiff's takings claims in *Knick*.  This Court should deny Intervenor's motion to strike in its entirety.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court to Deny the Intervenors' Motion to Dismiss in its entirety.  Should the Court find any of Plaintiffs' allegations to be deficient, Plaintiffs request leave to amend.

Dated:  December 27, 2021

RUTAN & TUCKER, LLP
DOUGLAS J. DENNINGTON
JAYSON PARSONS


By: _____
Douglas J. Dennington
Attorneys for Plaintiffs

Rutan & Tucker, LLP
*attorneys at law*

560/036892-0001
17307743.2 a12/27/21                    -11-

PLAINTIFFS' OPPOSITION TO
INTERVENORS' MOTION TO DISMISS/TO
STRIKE DECLARATORY RELIEF REQUEST