MARC SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
ROHIT NATH (316062)
rnath@susmangodfrey.com
HALLEY JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

MARK ROSENBAUM (59940)
mrosenbaum@publiccounsel.org
KATHRYN EIDMANN (268053)
keidmann@publiccounsel.org
FAIZAH MALIK (320479)
fmalik@publiccounsel.org
TARA FORD (322049)
tford@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

RACHEL STEINBACK (310700)
rachelsteinback@nlsla.org
ANA ZUNIGA (281768)
anazuniga@nlsla.org
DAVID PALLACK (90083)
dpallack@nlsla.org
NEIGHBORHOOD LEGAL
SERVICES OF LOS ANGELES
COUNTY
13327 Van Nuys Blvd.
Pacoima, California 91331
Telephone: (818) 492-5240
Facsimile: (818) 896- 6647

RYAN M. KENDALL (324714)
rmkendall@lafla.org
BARBARA SCHULTZ (168766)
bschultz@lafla.org
LEGAL AID FOUNDATION OF
LOS ANGELES
7000 S. Broadway
Los Angeles, California 90003
Telephone: (213) 640-3986
Facsimile: (323) 613-7005

*Attorneys for Intervenor-Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GHP Management Corp. et al., <br><br> Plaintiffs, <br><br> vs. <br><br> City of Los Angeles, <br><br> Defendants. | Case No. 2:21-cv-06311 <br><br> **INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STRIKE DECLARATORY RELIEF REQUEST** <br><br> DATE: January 24, 2022 <br> COURTROOM: 9C, 9th Floor <br> JUDGE: Hon. Dean D. Pregerson |

i

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1
II. ARGUMENT .................................................................................................. 1
    A. *Yee* controls the *per se* physical takings analysis. ................................ 1
    B. Plaintiffs' *Penn Central* Response Mischaracterizes Intervenors' Arguments and Ignores Controlling Law .......................... 4
        1. Plaintiffs' economic impact analysis misses the mark. ............... 4
        2. The City's Ordinances operate like other housing regulations that do not substantially interfere with investment-backed expectations. ................................................ 5
        3. The character of the government regulation dooms Plaintiffs' regulatory takings claim. ........................................... 7
    C. Plaintiffs concede they have no right to declaratory relief .................... 8
III. CONCLUSION ............................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAGLA v. City of Los Angeles*,
   500 F. Supp. 1088 (C.D. Cal. 2020) ................................................................. 7

*Alabama Assoc. of Realtors v. Dept. of Health and Human Servs.*,
   141 S. Ct. 2485 (2021) ..................................................................................... 4

*Avalon Pac.— Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*,
   192 Cal. App. 4th 1183 (2011) ........................................................................ 6

*Baptiste v. Kennealy*,
   40 F. Supp. 3d 353 (D. Mass. 2020) ................................................................ 8

*Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*,
   141 S. Ct. 731, 209 L. Ed. 2d 163 (2021) ........................................................ 5

*Bridge Aina Le'a, LLC v. Land Use Comm'n*,
   950 F.3d 610 (9th Cir. 2020) ....................................................................... 4, 5

*Cedar Point Nursery v. Hassid*,
   141 S. Ct. 2063 (2021) .................................................................................2, 3

*Colony Cove Props., Ltd. Liab. Co. v. City of Carson*,
   888 F.3d 445 (9th Cir. 2018) .................................................................. 5, 7, 8

*F.C.C. v. Fla. Power Corp.*,
   480 U.S. 245 .................................................................................................... 8

*Guggenheim v. City of Goleta*,
   638 F.3d 1111 (9th Cir. 2010) ......................................................................... 6

*Heights Apts., LLC v. Waltz*,
   510 F. Supp. 3d 789 (D. Minn. 2020) .............................................................. 8

*Knick v. Township of Scott*,
   139 S. Ct. 2162 (2021) .................................................................................8, 9

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ........................................................................................ 4

ii

*N. 7th St. Assoc. v. Constante*,
 7 Cal. App. 5th Supp. 1 (Cal. Ct. App. 2016) .......................................................... 6

*Pakdel v. City and County of San Francisco*,
 141 S. Ct. 2226 (2021) ............................................................................................ 3

*Penn Central Transp. Co. v. City of New York ("Penn Central")*,
 438 U.S. 104 (1978) ...................................................................................... 1, 4, 7, 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*,
 535 U.S. 302 (2002) ............................................................................................ 2, 7

*Yee v. City of Escondido*,
 503 U.S. 519 (1992) ......................................................................................*passim*

**Statutes**

Cal. Civ. Code § 1946.2 ................................................................................................ 6

Cal. Code Civ. P. § 1179.03.5 ....................................................................................... 6

**Rules**

Rule 12(b)(6) ................................................................................................................. 4

# I. INTRODUCTION

Plaintiffs' response confirms that their complaint should be dismissed because they fail to allege a cognizable *per se* physical takings claim or a plausible regulatory takings claim. Faced with well-established precedent that regulations of the landlord-tenant relationship do not amount to *per se* physical takings, Plaintiffs urge the Court to discard that case law in favor of a single line from a recent Supreme Court stay order, of dubious precedential value, that did not even address a takings claim. *Yee v. City of Escondido*, 503 U.S. 519 (1992), forecloses Plaintiffs' *per se* theory as a matter of law. Plaintiffs' arguments that *Yee* is distinguishable have been rejected by numerous district courts addressing *per se* takings challenges to COVID-19-related eviction ordinances.

As for their regulatory takings claim under *Penn Central Transp. Co. v. City of New York ("Penn Central")*, 438 U.S. 104 (1978), after Intervenors pointed out both the pleading and categorical deficiencies in Plaintiffs' complaint, Plaintiffs argue primarily that this is a fact-intensive inquiry that cannot be resolved at the pleading stage. But Plaintiffs' allegations, even if true, would not entitle them to relief because they have failed to plausibly allege any substantial diminution in value of their parcels as a whole. Each of Plaintiffs' properties at issue are large complexes with tens and, in most all cases, hundreds of units, yet the Complaint alleges only a fraction of those tenants are behind on rent. This Court should have no qualms about dismissing a regulatory takings claim that fails to plausibly state a claim for relief. *See infra* Section II.B.

Finally, in the alternative, the Court should strike Plaintiffs' requests for declaratory relief. Plaintiffs admit that their request for equitable relief in is "not necessary" and do not cite a single case permitting such relief for a takings claim.

# II. ARGUMENT

### A. *Yee* controls the *per se* physical takings analysis.

Plaintiffs chide Intervenors for relying on *Yee*, the binding Supreme Court

1

precedent that has guided courts and litigants in the physical takings analysis for three decades. Dkt. 47 ("Opp.") at 1–4. In doing so, Plaintiffs misconstrue the holding of *Yee*. They ignore the unanimous, well-reasoned analysis of multiple courts, dismissing those as mere district court decisions instead of confronting the persuasive authority they offer this Court in analyzing a COVID-19 related eviction ordinance challenged under the Takings Clause. Opp. at 4. Plaintiffs make no attempt to distinguish the reasoning of those courts. They instead resort to distorting *Yee* beyond recognition.

Under *Yee*, "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee*, 503 U.S. at 528 (emphasis in original); *id.* at 531 ("Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals."). Where, as here, a landlord *voluntarily rents* its land to a tenant, subsequent government regulations limiting the terms on which a tenant may be evicted do not "require[] any physical invasion of [landlords'] property" because the "tenants were invited by [the landlords], not forced upon them by the government." *Id.* at 528. As the Supreme Court reinforced in *Cedar Point*, the central question in a physical takings case is "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021) (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321–23 (2002)). Here, the City's Ordinances do not force Plaintiffs to rent their apartments to tenants in the first instance, and therefore do not cause a physical taking. They simply regulate the landlord-tenant relationship, imposing reasonable, limited restrictions on evictions in certain circumstances.

Plaintiffs attempt to drive a wedge between *Yee* and this case by arguing that *Yee* did not prohibit evictions for failure to pay rent, while the City's Ordinances

2

purportedly do. Opp. at 2–3. Plaintiffs' argument depends on a gross mischaracterization of the Ordinances as a "blanket moratorium on evictions." *Id.* at 3. The Ordinances do not prohibit all evictions, let alone for non-payment of rent. Tenants must qualify for the protections afforded by the City's Ordinances, and be "unable to pay rent" due to the pandemic. *See* Dkt. 17, City's Mtn. to Dismiss ("City's Mtn.") at 4–5; Dkt. 40, City's Reply at 2–3. Landlords like Plaintiffs retain their right to evict defaulting tenants who do not qualify for the Ordinances' protections. Plaintiffs are also protected if they initiate evictions based on a "good faith" belief that a defaulting tenant is not protected by the Ordinances. For these reasons, the Ordinances do not "compel" Plaintiffs to continue renting to all tenants no matter what. *See* Opp. at 3. And of course, the Ordinances are temporary in nature, not a "perpetual" regulation that forever prevents evictions even of tenants who have been economically devastated by the pandemic. *See id.*

After urging this Court to abandon *Yee*, Plaintiffs rely on two recent Supreme Court cases that did not even address physical takings to suggest that the Supreme Court somehow dramatically reshaped the law. *First*, Plaintiffs seize on a footnote in *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021), a case addressing prudential ripeness for regulatory takings, to claim that regulations restricting landlords' use of their properties are now compensable physical takings. Opp. at 4. In that footnote, the Court suggested that on remand, the lower courts "*may* give further consideration" to the petitioners' "exaction, physical taking, or private taking" claims "in light of" *Cedar Point*. *Pakdel*, 141 S. Ct. at 2229 n.1 (emphasis added). *See* Dkt. 43 ("Mtn.") at 2 n.1; *see also* City's Reply at 6–7. Numerous courts analyzing physical takings claims have duly considered *Cedar Point* and concluded that it does not affect such claims. That is because *Cedar Point* involved a government regulation *requiring* private landowners to grant access to enter their private farms. *See* Mtn. at 3–4 (collecting cases rejecting landlords' claims that *Cedar Point* impacts the physical takings analysis for COVID-19 related eviction

3

regulations). By contrast, Plaintiffs invited tenants onto their properties; the City did not force them to open their properties.

*Second*, Plaintiffs double down on their assertion that *Alabama Association of Realtors v. Department of Health and Human Servs.*, 141 S. Ct. 2485 (2021), which had nothing to do with the Takings Clause, supersedes *Yee*. Opp. at 4. They admit that *Alabama Association of Realtors* is not a takings case—glibly suggesting only that its "procedural posture" differs from this case. *Id.* Yet they say it signals that a "healthy majority" of the Supreme Court is prepared to upend decades of physical takings precedent. *Id.* at 5. *Alabama Association of Realtors* acknowledges simply that the right to exclude is "**one** of the most fundamental elements of property ownership." 141 S. Ct. at 2489 (emphasis added) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). *Loretto* itself held that to succeed on a physical takings claim, government action must "effectively destroy" each strand "in an owner's bundle of property rights," which is not remotely the case with the City's Ordinances. *Loretto*, 458 U.S. at 435.

### B. Plaintiffs' *Penn Central* Response Mischaracterizes Intervenors' Arguments and Ignores Controlling Law

Plaintiffs contend regulatory takings claims are "rarely susceptible" to a motion to dismiss, Opp. at 5, yet other district courts have disposed of claims like Plaintiffs' under Rule 12(b)(6). *See* City's Reply at 10 (collecting cases). Because Plaintiffs' allegations do not come close to plausibly pleading a regulatory taking under any *Penn Central* factor, their Complaint cannot survive a motion to dismiss.

#### 1. Plaintiffs' economic impact analysis misses the mark.

The economic-impact factor is dispositive. The facts alleged in the Complaint, taken as true, do not come anywhere close to establishing that the Ordinance is a "regulatory action[] that [is] functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owners from his domain." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 631 (9th Cir.

2020), cert. denied sub nom. *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 141 S. Ct. 731, 209 L. Ed. 2d 163 (2021). The central focus of this factor is diminution of value, and that means a Plaintiff must establish the economic impact suffered by "compar[ing] the value that has been taken from the property with the value that remains in the property" for the *parcel as whole*." *Colony Cove Props., Ltd. Liab. Co. v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018); *see also* City's Mtn. at 19–20.

On reply, Plaintiffs fail to identify any allegations in the complaint that establish a diminution of value. Opp. at 5-6. The Complaint merely alleges that some unspecified fraction of tenants at each of their large complexes—i.e., a small fraction of units at each parcel—is behind on rent. Nothing in the Complaint specifies the "value that remains in the property" after the alleged diminution, let alone the percentage diminution in value of each of the thirteen properties at issue in this case. That is dispositive. *Bridge Aina Le'a*, 950 F.3d at 632; *see also* City's Reply at 1 ("Plaintiffs . . . have not shown whether it is the City's eviction protections, or some other law, that will cause them to 'lose' rents and evictions."); *id.* at 3 n.1 (explaining that Plaintiffs must show their tenants qualify for the Ordinances' protections).

The Court can ignore Plaintiffs' suggestion that the Ninth Circuit's *Colony Cove* was wrongly decided. *Colony Cove* is the law of this circuit, has never been overruled, and has been cited favorably in recent takings decisions. *See Bridge Aina Le'a*, 950 F.3d at 633 (9th Cir. 2020).

    2.    The City's Ordinances operate like other housing regulations that do not substantially interfere with investment-backed expectations.

Plaintiffs urge the Court to ignore substantial pre-existing housing regulations and restrictions on evicting tenants[1] by describing these limitations as mere

---

[1] Rent control ordinances permanently reduce the ability of property owners to profit from their investments. *See Yee,* 503 U.S. at 529 ("Ordinary rent control often

"tinkering with the landlord-tenant relationship." Opp. at 8. Plaintiffs also declare the eviction moratorium "categorically eviscerates [their] right to evict defaulting tenants," but this is not so.[2] *Id.* Given that landlords do business in a regulated field, courts have rejected claims that regulatory changes have "upset" their expectations.[3] *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119-22 (9th Cir. 2010) (explaining that revisions to longstanding housing regulations do not upset the investment-backed expectations of landlords). Both the State and the City strictly limit the circumstances under which a landlord can evict a tenant. Here, the City's moratorium functions as a temporary revision to longstanding housing regulations, including, in particular, "just cause" restrictions on ability of landlords to evict. Indeed, during much of the pandemic, the State extended "just cause" protections to all tenants.[4] *See* Cal. Code Civ. P. § 1179.03.5 (extending "just cause" protections to all renters through Sept. 30, 2021). The City's eviction moratorium operates like a "just cause" provision by temporarily removing nonpayment of rent due to COVID-19 hardship from the list of evictable acts—and only for a limited period. The moratorium has not eliminated tenants' obligation to pay rent and only delays landlords' right to evict for nonpayment related to COVID-19 hardship. *See* City's

---

transfers wealth from landlords to tenants by reducing the landlords' income and the tenants' monthly payments . . .").

[2] As the City explains, the moratorium "only delays . . . *some* evictions: even during the pandemic, landlords can still evict tenants (1) in arrears before the pandemic; (2) withholding rent without a COVID-19 hardship, or (3) at-fault for any reason not covered by the ordinance." City's Mtn. at 17. Even when a landlord may evict a tenant, State law circumscribes the right of landlords to exclude. *See N. 7th St. Assoc. v. Constante*, 7 Cal. App. 5th Supp. 1, 5 (Cal. Ct. App. 2016) ("A lessor's action to recovery possession of real property is not one for unlawful detainer where he does not comply with the statutory . . . requirements.").

[3] *See* City's Mtn. at 16 n.8 ("[B]y entering into the residential rental business landlords already forfeit their claim to an unfettered right to exclude particular individuals. *Avalon Pac.—Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*, 192 Cal. App. 4th 1183, 1190 (2011) ('A leasehold estate gives the lessee the exclusive possession of the premises against all the world, including the owner, for the term of the lease.'). That is one reason why under local and state law, landlords' ability to exclude and evict is regulated.").

[4] Prior to the enactment of Cal. Code Civ. P. § 1179.03.5, state "just cause" protections, as opposed to local "just cause" protections, were available to only a limited number of tenancies. *See* Cal. Civ. Code § 1946.2.

Mtn. at 5; City's Reply at 9. These regulatory impacts do not substantially interfere with Plaintiffs' investment-backed expectations. The eviction moratorium tinkers with existing eviction protections and only temporarily restricts the right of landlords to evict for COVID-19-related nonpayment. Other grounds for eviction remain available. Shrinking the list of evictable acts does not disrupt Plaintiffs' investment-backed expectations.

Plaintiffs further argue that this Court must look at the "potentially devastating" effect of the moratorium on Plaintiffs "*today*"—instead of over a wider time horizon. Opp. at 8 (emphasis in original). But this Court must use a broader lens. *See Colony Cove*, 888 F.3d at 452 ("To form the basis for a taking claim, a purported investment-baked expectation must be objectively reasonable."); *Tahoe-Sierra*, 535 U.S. at 331–32 "[a]n interest in real property is defined by the metes and bounds that describe its geographic dimensions *and* the term of years that describes the temporal aspect of the owner's interest") (emphasis added). Plaintiffs' insistence that the Court examine their claims through a narrow temporal lens runs counter to a common-sense understanding of investment expectations; the value of a property is derived from a lifetime of ownership, not the ability to extract rents in a narrow window of time. This is why Plaintiffs' reliance on this court's decision in the *AAGLA v. City of Los Angeles*, 500 F. Supp. 1088, 1096 (C.D. Cal. 2020), is unavailing. That case involved the foreseeability of the Ordinance on comparatively short-term residential leases, while *Penn Central* analysis examines the foreseeability of an emergency ordinance over the course of the entire life of a property. Here, Plaintiffs have not established their entitlement to relief because their claims are speculative, implausible, and do not meet the second prong of the *Penn Central* test.

      3.  The character of the government regulation dooms Plaintiffs' regulatory takings claim.

Plaintiffs' final argument runs aground on controlling law. Plaintiffs state that "[t]he City's Eviction Moratorium constitutes a physical invasion of Plaintiffs'

7

properties . . ." Opp. at 10. As explained *supra* Section II.A, *Yee* counsels that a physical taking does not occur where "tenants were invited by [Plaintiffs], not forced upon them by government." 503 U.S. at 528 (citing *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252-53). Courts have repeatedly ruled that COVID-19 moratoria are "precisely the kind of public program benefiting the common good that is not a compensable taking." *Heights Apts., LLC v. Waltz*, 510 F. Supp. 3d 789, 814 (D. Minn. 2020); *Baptiste v. Kennealy*, 40 F. Supp. 3d 353, 390 (D. Mass. 2020) (stating that governments can "in times of emergency or otherwise, reallocate economic hardships between . . . landlords and their tenants, without violating the Takings Clause."); *see also* Mtn. at 9 (collecting cases). Because the City's eviction moratorium is a "public program adjusting the benefits and burdens of economic life to promote the common good," Plaintiffs fail to meet this prong of the *Penn Central* test. *Colony Cove*, 888 F.3d at 454 (citing *Penn Central*, 438 U.S. at 124). This alone is fatal to Plaintiffs' claims. *See, e.g.*, *Heights Apts.*, 510 F. Supp. 3d at 814–15 (dismissing landlords' regulatory takings claim for failing to meet third *Penn Central* prong).

### C. Plaintiffs concede they have no right to declaratory relief

Plaintiffs "candidly" admit that there is no need for declaratory relief because their suit seeks just compensation. Opp. at 11. That concession should begin and end the Court's inquiry. Yet Plaintiffs insist that the Court should allow them to pursue an "as-applied" declaration anyway. *Id.* Plaintiffs cite no authority for their position, nor do they grapple with the uniform rulings of district courts that plaintiffs cannot secure declaratory relief on takings claims. *See* Mtn. at 10 (collecting cases). They point to *Knick v. Township of Scott*, 139 S. Ct. 2162 (2021), as a purported example of the Supreme Court blessing declaratory relief. Their reliance on *Knick* is mistaken. Plaintiffs correctly note that the plaintiff in *Knick* sought declaratory and injunctive relief. Opp. at 11. But the Supreme Court did not approve of the requested relief. On the contrary, it held that such equitable remedies are *unavailable* so long as just

compensation is available. *See, e.g.*, *Knick*, 139 S. Ct. at 2176 ("[B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable."). Plaintiffs do not dispute that the declaration they seek is an equitable remedy or that compensation is available for a taking (though none has occurred here). *See* Mtn. at 10 & n.6. Plaintiffs' complaint seeks compensation, and that is the only remedy they may pursue. Their request for declaratory relief is barred and should be stricken.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in Intervenors' opening brief and in the City of Los Angeles's briefing, Intervenors respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

Dated: January 10, 2021          **SUSMAN GODFREY L.L.P.**

By: */s/ Halley Josephs*
MARC SELTZER
KRYSTA K. PACHMAN
ROHIT NATH
HALLEY JOSEPHS
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
kpachman@susmangodfrey.com
rnath@susmangodfrey.com
hjosephs@susmangodfrey.com

By: */s/ Rachel Steinback*
RACHEL STEINBACK
ANA ZUNIGA
DAVID PALLACK
NEIGHBORHOOD LEGAL SERVICES OF LOS ANGELES COUNTY
13327 Van Nuys Blvd.
Pacoima, California 91331
Telephone: (818) 492-5240
Facsimile: (818) 896-6647
rachelsteinback@nlsla.org

anazuniga@nlsla.org
dpallack@nlsla.org

By: */s/ Faizah Malik*
MARK ROSENBAUM
KATHRYN EIDMANN
FAIZAH MALIK
TARA FORD
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
keidmann@publiccounsel.org
fmalik@publiccounsel.org
tford@publiccounsel.org

By: */s/ Ryan M. Kendall*
RYAN M. KENDALL
BARBARA SCHULTZ
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway
Los Angeles, California 90003
Telephone: (213) 640-3986
Facsimile: (323) 613-7005
rmkendall@lafla.org
bschultz@lafla.org

# **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Halley Josephs*
Halley Josephs